## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| ABU BAKR LADD | ) | JURY TRIAL DEMANDED |
| 4225 East Labadie Avenue | ) | |
| St. Louis, Missouri 63115 | ) | |
|        Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Docket No. |
| | ) | |
| | ) | |
| CITY OF ST. LOUIS, MISSOURI | ) | |
| c/o City of St. Louis City Counselor | ) | |
| Civil Litigation Unit | ) | |
| 314 City Hall | ) | |
| 1200 Market Street | ) | |
| St. Louis, Missouri 63103; | ) | |
| | ) | |
| STATE OF MISSOURI | ) | (Electronically filed) |
| c/o Office of Missouri Attorney General | ) | |
| Old Post Office Building | ) | |
| 815 Olive Street, Suite 200 | ) | |
| St. Louis, Missouri 63101; | ) | |
| | ) | |
| ST. LOUIS BOARD OF POLICE COMMISSIONERS | ) | |
| 1200 Market Street | ) | |
| St. Louis, Missouri 63103; | ) | |
| | ) | |
| JEFFREY PICKERING | ) | |
| Individually and in His Capacity as Detective, | ) | |
| City of St. Louis Police Department | ) | |
| 1200 Market Street | ) | |
| St. Louis, Missouri 63103; | ) | |
| | ) | |
| SCOTT MCKELVEY | ) | |
| Individually and in His Capacity as Detective, | ) | |
| City of St. Louis Police Department | ) | |
| 1200 Market Street | ) | |
| St. Louis, Missouri 63103; | ) | |
| | ) | |
| PAUL NOCCHIERO | ) | |
| Individually and in His Capacity as Board Secretary, | ) | |
| St. Louis Board of Police Commissioners | ) | |
| 1200 Market Street | ) | |
| St. Louis, Missouri 63103; | ) | |

JOSEPH LEHMAN                                              )
Individually and in His Capacity as Sergeant,             )
City of St. Louis Police Department                       )
Internal Affairs Division                                 )
1200 Market Street                                        )
St. Louis, Missouri 63103;                                )
                                                          )
JACK HUELSMANN                                            )
Individually and in His Capacity as Deputy Commander,     )
City of St. Louis Police Department                       )
Internal Affairs Division                                 )
1200 Market Street                                        )
St. Louis, Missouri 63103;                                )
                                                          )
DANIEL ISOM                                               )
Individually and in His Capacity as Captain,              )
City of St. Louis Police Department                       )
Internal Affairs Division                                 )
1200 Market Street                                        )
St. Louis, Missouri 63103;                                )
                                                          )
DAVID HEATH                                               )
Individually and in His Capacity as Lieutenant Colonel,   )
City of St. Louis Police Department                       )
Inspector of Police                                       )
1200 Market Street                                        )
St. Louis, Missouri 63103;                                )
                                                          )
JOSEPH MOKWA                                              )
Individually and in His Capacity as Chief of Police,      )
City of St. Louis Police Department                       )
1200 Market Street                                        )
St. Louis, Missouri 63103; and                            )
                                                          )
LUKE J. ADLER                                             )
Individually                                              )
Federal Bureau of Investigation                           )
St. Louis Filed Office                                    )
2222 Market Street                                        )
St. Louis, Missouri 63103.                                )
                    Defendants.                           )

2

## CIVIL ACTION COMPLAINT

COMES NOW, Abu Bakr Ladd, by and through his counsel, Anser Ahmad, Esquire, and brings forth this civil action seeking damages, punitive damages, declaratory, injunctive and other relief against the Defendants and their agents, servants and/or employees in their individual and official capacities for violations of his constitutional, civil and other federally protected rights, and avers:

## I. JURISDICTION

1. This federal district court has jurisdiction based upon federal question as claims arising under First, Fourth, Fifth, Sixth, Seventh, Ninth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1981, 1983, 1985(3), 1986, 1988, Title VI of the Civil Rights Act of 1964 and other federal laws, amount in controversy and supplemental jurisdiction 28 U.S.C. § 1367(a).

## II. PARTIES

2. Plaintiff, Abu Bakr Ladd ("Ladd" or "Plaintiff"), is an adult male, sixty-two (62) years of age, residing within the Eastern District of Missouri at 4225 East Labadie Avenue, St. Louis, Missouri, 63115.

3. Defendant, City of St. Louis, is a municipality established under the laws of the State of Missouri. At all times relevant hereto, Defendant, City of St. Louis, received federal funds to support its policing and law enforcement activities carried out by the City of St. Louis Police Department, the St. Louis Metropolitan Police Department and the St. Louis Board of Police Commissioners. As a recipient of federal funds, the City of St. Louis must comply with Title VI of the Civil Rights Act of 1964, which prohibits discrimination in the provision of city services funded by the federal government; and, as a recipient of Title VI Funds, the City of St. Louis has waived any claims to sovereign immunity under the

Eleventh Amendment to the United States Constitution.  Further, at all times relevant to this lawsuit the City of St. Louis jointly trained, hired, operated, managed, directed, supervised and/or controlled the individually named City of St. Louis police officers and the individually named supervisory police officers and maintains a place of business at City Hall, 1200 Market Street, St. Louis, Missouri 63103.

4.   Defendant, State of Missouri, is a sovereign state of the United States of America.  At all times relevant hereto, Defendant, State of Missouri, received federal funds to support its state and local police departments such as the City of St. Louis Police Department, the St. Louis Metropolitan Police Department and that St. Louis Board of Police Commissioners.  As a recipient of federal funds, the State of Missouri must comply with Title VI of the Civil Rights Act of 1964, which prohibits discrimination in the provision of state services funded by the federal government; and, as a recipient of Title VI Funds, the State of Missouri has waived any claims to sovereign immunity under the Eleventh Amendment to the United States Constitution.  Further, at all times relevant to this lawsuit the State of Missouri jointly trained, hired, operated, managed, directed, supervised and/or controlled the SLBPC, City of St. Louis police officers and the individually named supervisory police officers and maintains a place of business at Old Post Office Building, 815 Olive Street, Suite 200, St. Louis, Missouri 63101.

5.   Defendant, City of St. Louis Board of Police Commissioners ("SLBPC") is responsible for the effective operation of the Metropolitan Police Department.  At all times relevant hereto, Defendant, SLBPC, received federal funds to support its law enforcement activities.  As a recipient of federal funds, SLBPC must comply with Title VI of the Civil Rights Act of 1964, which prohibits discrimination in the provision of law enforcement services funded

4

by the federal government; and, as a recipient of Title VI Funds, SLBPC has waived any claims to sovereign immunity under the Eleventh Amendment to the United States Constitution.  At all times relevant hereto, SLBPC set policy, made promotions, held both closed and open meetings and coordinated with the Chief of Police in providing effective police services to the citizens of the City of St. Louis.  Further, at all times relevant to this lawsuit SLBPC jointly trained, hired, operated, managed, directed, supervised and/or controlled the City of St. Louis police officers and the individually named supervisory police officers and maintains a place of business at City Hall, 1200 Market Street, St. Louis, Missouri 63103.

6.  Defendant, Detective Jeffrey Pickering ("Pickering") is a former City of St. Louis Police Detective in the Gang Unit. At all times relevant hereto, he acted in concert with Defendants McKelvey, Adler and others to manufacture evidence against Ladd, which led to Ladd's unlawful search and seizure, wrongful arrest, imprisonment and malicious prosecution.  Further, at all times relevant to this lawsuit he was jointly trained, hired, managed, directed, supervised and/or controlled by the City of St. Louis, State of Missouri, SLBPC and the individually named supervisory police officers and maintained a place of business at City Hall, 1200 Market Street, St. Louis, Missouri 63103.

7.  Defendant, Detective Scott McKelvey ("McKelvey") is a City of St. Louis Police Detective.  At all times relevant hereto, he acted in concert with Defendants Pickering, Adler and others to manufacture evidence against Ladd, which led to Ladd's unlawful search and seizure, wrongful arrest, imprisonment and malicious prosecution.  Further, at all times relevant to this lawsuit he was jointly trained, hired, managed, directed, supervised and/or controlled by the City of St. Louis, State of Missouri, SLBPC and the

individually named supervisory police officers and maintained a place of business at City Hall, 1200 Market Street, St. Louis, Missouri 63103.

8. Defendant, Paul Nocchiero ("Nocchiero") is a former St. Louis Board of Police Commissioners, Board Secretary. At all times relevant to this lawsuit, he was responsible for reviewing Internal Affairs Division ("I.A.D.") Complaints filed by citizens; in particular, he reviewed and approved the I.A.D.'s finding in Ladd's I.A.D. Complaint. Further, at all times relevant hereto, Nocchiero was part of a member of the SLBPC policy making team that set policy, made promotions, held both closed and open meetings and coordinated with the Chief of Police in providing effective police services to the citizens of the City of St. Louis. Further, at all times relevant to this lawsuit he was jointly trained, hired, managed, directed, supervised and/or controlled by the City of St. Louis, State of Missouri, SLBPC and the individually named supervisory police officers and maintained a place of business at City Hall, 1200 Market Street, St. Louis, Missouri 63103.

9. Defendant, Joseph Lehman ("Lehman") is a City of St. Louis police officer. At all times relevant to this lawsuit, he was an I.A.D. Investigator responsible for investigating I.A.D. Complaints filed by citizens; in particular, he was the lead or "primary" investigator in Ladd's I.A.D. Complaint. Further, at all times relevant to this lawsuit, Lehman was a member of policy making team of the City of St. Louis I.A.D. and made policies related to the investigation of police officers who were the subject of I.A.D. Complaints. Further, at all times relevant to this lawsuit he was jointly trained, hired, managed, directed, supervised and/or controlled by the individually named City of St. Louis, State of Missouri, SLBPC and maintained a place of business at City Hall, 1200 Market Street, St. Louis, Missouri 63103.

10. Defendant, Jack Huelsmann ("Huelsmann") is a retired Lieutenant of the City of St. Louis Police Department.  At all times relevant to this lawsuit, he was the Deputy Commander of the Internal Affairs of the City of St. Louis Police Department and responsible for investigating I.A.D. Complaints filed by citizens; in particular, he jointly investigated Ladd's I.A.D. Complaint with Lehman.  Further, at all times relevant to this lawsuit, Huelsmann was a member of policy making team of the City of St. Louis I.A.D. and made policies related to the investigation of police officers who were the subject of I.A.D. Complaints.  Further, at all times relevant to this lawsuit he was jointly trained, hired, managed, directed, supervised and/or controlled by the individually named City of St. Louis, State of Missouri, SLBPC and maintained a place of business at City Hall, 1200 Market Street, St. Louis, Missouri 63103.

11. Defendant, Daniel Isom ("Isom") is the current City of St. Louis Police Chief of Police.  At all times relevant to this lawsuit, he was a Captain in the I.A.D. Unit responsible for reviewing I.A.D. Complaints filed by citizens; in particular, he reviewed and approved the I.A.D.'s finding in Ladd's I.A.D. Complaint.  Further, at all times relevant to this lawsuit, Isom was a member of policy making team of the City of St. Louis I.A.D. and made policies related to the investigation of police officers who were the subject of I.A.D. Complaints.  Further, at all times relevant to this lawsuit he was jointly trained, hired, managed, directed, supervised and/or controlled by the individually named City of St. Louis, State of Missouri, SLBPC and maintained a place of business at City Hall, 1200 Market Street, St. Louis, Missouri 63103.

12. Defendant, David Heath ("Heath") currently a City of St. Louis police officer.  At all times relevant to this lawsuit, he was the Inspector of Police and responsible for reviewing

I.A.D.'s processing and investigating of complaints filed by citizens; in particular, he reviewed and approved the I.A.D.'s finding in Ladd's I.A.D. Complaint.  Further, at all times relevant to this lawsuit, Heath was a member of policy making team of the City of St. Louis I.A.D. and made policies related to the investigation of police officers who were the subject of I.A.D. Complaints.  Further, at all times relevant to this lawsuit he was jointly trained, hired, managed, directed, supervised and/or controlled by the individually named City of St. Louis, State of Missouri, SLBPC and maintained a place of business at City Hall, 1200 Market Street, St. Louis, Missouri 63103.

13. Defendant, Joseph Mokwa ("Mokwa") is a former City of St. Louis Police Chief of Police. At all times relevant to this lawsuit, he was responsible for reviewing I.A.D. Complaints filed by citizens; in particular, he reviewed and approved the I.A.D.'s finding in Ladd's I.A.D. Complaint.  Further, at all times relevant to this lawsuit, Mokwa was a member of policy making team of the City of St. Louis I.A.D. and made policies related to the investigation of police officers who were the subject of I.A.D. Complaints.  Further, at all times relevant to this lawsuit he was jointly trained, hired, managed, directed, supervised and/or controlled by the individually named City of St. Louis, State of Missouri, SLBPC and maintained a place of business at City Hall, 1200 Market Street, St. Louis, Missouri 63103.

14. Defendant, Luke J. Adler ("Adler") is an Agent employed by the Federal Bureau of Investigation ("FBI") assigned to the Joint Terrorism Task Force.  At all times relevant hereto, he acted in concert with Defendants Pickering, McKelvey and others to manufacture evidence against Ladd, which led to Ladd's unlawful search and seizure, wrongful arrest, imprisonment and malicious prosecution.  Further, at all times relevant to

this lawsuit he was jointly trained, hired, managed, directed, supervised and/or controlled by the FBI, City of St. Louis, State of Missouri, SLBPC and maintained places of business at the City of St. Louis Police Department, Intelligence Unit, City Hall, 1200 Market Street, St. Louis, Missouri 63103 and the FBI, St. Louis Field Office, 2222 Market Street, St. Louis, Missouri 63103.

### III. STATEMENT OF FACTS

15.  Ladd is a United States citizen.

16.  In 1973, Ladd converted to the Muslim faith.

17.  During May 2003, or earlier, led by Defendant Adler, the Federal Bureau of Investigation ("FBI") began investigating Ladd for the purpose of maliciously prosecuting him in order to turn Ladd into an informant with the St. Louis Muslim community and elsewhere (see Exhibits A, B and C).

18.  Defendant Pickering claims that he was provided with information about Ladd by a so-called Confidential Informant ("CI") that knew Ladd, however, Ladd avers that the alleged CI never existed.

19.  Ladd reasonably believes and avers that Defendants Pickering and McKelvey, for the purpose of currying favors with federal law enforcement officials and their supervisors agreed to provide Defendant Adler with false information about Ladd.

20.  According to Defendant Pickering's sworn deposition in another federal lawsuit brought by Ladd, he claims to have cultivated a relationship with the CI and relied upon the CI to provide evidence against Ladd.

21. Further, Defendant Pickering allegedly claims to have cultivated that CI relationship at the behest of Defendant Adler who sought to recruit Ladd as an FBI informant within the St. Louis Muslim community.

22. In an Affidavit in Support of a Search Warrant dated September 24, 2003, Defendant Pickering, falsely swore and attested to the following (see Exhibit D):

   a. That he (Pickering) had conferred with a confidential informant CI on September 17, 2003, who indicated that crack cocaine and firearms were being sold from Plaintiff's residence;

   b. That his CI had had been inside Plaintiff's home on numerous occasions and had observed crack cocaine and numerous firearms on each occasion;

   c. That he (Pickering) conducted surveillance of Plaintiff's home on September 19, 2003, at which time he observed three (3) transactions as described by the CI;

   d. That he (Pickering) again conducted surveillance of Plaintiff's home on September 23, 2003, at which time he observed Plaintiff carrying a long item covered with what appeared to be a blanket into his residence; and

   e. That his CI contacted him again on September 23, 2003, at which time the CI indicated that he/she had just left Plaintiff's home where he/she observed Plaintiff to be in possession of cocaine base and firearms.

23. Defendant Pickering's observations could not have occurred as stated in his affidavit, given that Plaintiff was in Kentucky during Defendant Pickering's alleged surveillance of Plaintiff.

24. Further, no adult male person(s), other than the plaintiff, entered the plaintiff's home during the hours described in Defendant Pickering's affidavit, and, therefore, Defendant Pickering's observations could not have occurred as stated in his affidavit.

25. Plaintiff has numerous documents including phone records, hotel and sales receipts which prove that he was in Kentucky at the time of Defendant Pickering's alleged observations.

26. Defendant Pickering's affidavit contained fraudulent information that he knew to be absolutely false.

27. As a direct result of the false information provided to the Circuit Court for the City of St. Louis by Defendant Pickering through his affidavit, an unlawful search warrant was issued for Plaintiff's home (see Exhibit E).

28. On the morning of September 25, 2003, ten (10) officers from the St. Louis Metropolitan Police Department ("SLMPD"), including Defendant Pickering, stormed into Ladd's home to conduct a search following the issuance of a search warrant predicated solely upon Pickering's false assertions that he had conferred with a confidential informant who had seen Ladd selling drugs from his home (see Exhibit F).

29. No drugs were found at Ladd's residence (see Exhibit F).

30. SLMPD officers and federal agents found several firearms at Ladd's residence and due to a guilty plea that Ladd had entered into some twenty-five (25) years prior in California, Ladd was arrested for possession of the firearms.

31. Ladd was taken into custody by Defendant Adler of the Federal Bureau of Investigations who had been contacted by Defendant McKelvey (see Exhibit G), and was held in federal custody for seventy-seven (77) days before he was released.

32. During those seventy-seven (77) days, Defendant Adler and other federal agents visited Ladd and attempted to recruit him as a CI in the St. Louis Muslim community and elsewhere solely because Ladd's Muslim faith allowed him access to mosques and other places where St. Louis area Muslims gathered.

33. Ladd's Muslim faith does not permit him to become a false witness against another Muslim or any other person and he refused to become an informant.

34.  Defendant Adler and the other federal agents knew or should have known that if Ladd became a CI against other Muslims in the St. Louis area, such actions by Ladd would have substantially interfered with Ladd's First Amendment Rights of association and freedom of religion which would cause Ladd extreme spiritual and emotional distress.

35.  Defendant Adler's and the other federal agents attempted recruitment of Ladd was consistent with the FBI's well-known unlawful custom, policy and practice of maliciously prosecuting innocent Muslims solely for the purpose of recruiting them as confidential informants within their religious community.  See Vitello, Paul and Kirk Semple, "Muslims Say FBI Tactics Sow Anger and Fear," The New York Times, www.nytimes.com 12/18/2009 (see Exhibit H).

36.  At the time Defendant Adler and other federal agents attempted to recruit Ladd as an informant they knew that:

a.     Defendant Pickering's alleged CI did not exist;

b.     The information set forth in the Affidavit of Probable Cause for the Search Warrant was a lie;

c.     Ladd's residence had been unlawfully searched;

d.     Ladd had been unlawfully seized and arrested;

e.     Ladd had been unlawfully imprisoned; and

f.     Ladd was being maliciously prosecuted.

37.  Ladd objected to Defendant Adler and the agents that he had been characterized as a drug dealer in the faulty search warrant, to which Assistant United States Attorney John Ware responded that "Mr. Ladd, we know that you are not a drug dealer."

38. Through his federal public defender, Ladd requested an evidentiary hearing before the U.S. District Court to address the fraudulent statements of Pickering in his search warrant affidavit which had led to the search of Ladd's home and his arrest (see Exhibits I and J).

39. At that time, Defendant Pickering knew that any information that he had about the existence or nonexistence of his so-called CI was material and relevant to Ladd's innocence, guilt and/or sentence and must be preserved for those purposes under Brady v. Maryland.

40. One (1) day prior to the evidentiary hearing, however, Assistant United States Attorney John Ware moved to dismiss the charges against Ladd and the Court dismissed the case (see Exhibit K).

41. On or about January 15, 2004, after Ladd's criminal case was dismissed, he promptly filed a complaint with the SLBPC I.A.D. against Defendant Pickering wherein he alleged that Defendant Pickering manufactured evidence against him.

42. Defendant Nocchiero and others claimed that Ladd's original I.A.D. Complaint against Defendant Pickering was lost and compelled Ladd to file another I.A.D. Complaint.

43. Ladd promptly filed a second I.A.D. Complaint (see Exhibits L and M).

44. Defendants Lehman, Huelsmann, Isom, Heath, Nocchiero, Mokwa and others knowingly, intentionally, willfully, maliciously, wantonly, negligently, recklessly and with deliberate indifference to Ladd's constitutional, civil and other rights improperly investigated Ladd's claims and wrongfully concluded that Ladd's claims were not sustained (see Exhibit N, O and P).

45. Defendant Pickering, however, was not exonerated by the I.A.D. and was allowed to "medically" retire (he currently works as a private investigator) with his full pension

without there ever being a finding by any police department investigative unit that Defendant Pickering was free of any misconduct in Ladd's matter.

46. Defendants Heath, Huelsmann, SLBPC, Nocchiero, Isom and Mokwa knowingly, intentionally, willfully, maliciously, wantonly, negligently, recklessly and with deliberate indifference to Ladd's constitutional, civil and other rights in unlawful concert with each other personally possessed Ladd's I.A.D. Compliant File, reviewed and approved Defendant Lehman's improper findings as part of an unconstitutional custom, policy and practice of denying persons such as Ladd due process in the processing of complaints against police officers.

47. Defendants Heath, Huelsmann, SLBPC, Nocchiero, Isom and Mokwa had a duty to preserve all the evidence that it collected during its investigation, including preserving all evidence related to Defendant Pickering's so-called CI.

48. Defendants Heath, Huelsmann, SLBPC, Nocchiero, Isom and Mokwa did not preserve that evidence as part of an unconstitutional custom, policy and practice of denying persons such as Ladd due process in the processing of I.A.D. Complaints and fully exhausting their legal remedies against police officers.

49. Ladd reasonably believes and avers that Defendants Heath, Huelsmann, SLBPC, Nocchiero, Isom and Mokwa's refusal to preserve the evidence on the existence or nonexistence of the CI was part of a deliberate, malicious and unlawful concerted scheme to deny him due process by covering up their inadequate investigation of Defendant Pickering's unlawful conduct and to cover-up Defendant Pickering's unlawful conduct.

50. Ladd has suffered greatly as a result of Pickering's unlawful search and seizure. Ladd spent seventy-seven (77) days in federal custody and lost numerous jobs in his work as a

14

contractor as he was unable to bid for jobs and further unable to complete the jobs for which he had submitted bids prior to his incarceration.

51. Ladd has suffered greatly as a result of Defendants Heath, Huelsmann, SLBPC, Nocchiero, Isom and Mokwa's failure to properly investigate his claims against Defendant Pickering and preserve the evidence that was collected during their investigation.

52. Ladd's suffering continues through to the present date and will most likely continue for the rest of his life due to his professional and personal reputation having been permanently damaged as a result of his incarceration, and the public notice of his incarceration by the U.S. Attorney's Office.

53. Ladd's wife and son were also damaged by their loss of Ladd's physical, emotional and financial support during his incarceration, and their suffering also continues to this day and will most likely continue for the rest of their lives due to the permanent damage to Ladd's reputation and his ability to earn a sufficient income to support his family on account of the unlawful search of his home and his subsequent arrest.

54. At the time Ladd was arrested, State of Missouri and City of St. Louis officials and policy makers, City of St. Louis police officers, detectives and senior law enforcement officials and policy makers within the SLBPC and police department knew or through reasonable investigation should have known that for many years that Defendant Pickering and other police officers, including, but not limited to police officers Mike Matthews, Shell Sharp, William Noonan, Vincent T. Carr and Bobby Lee Garrett, had a history of lying in affidavits of probable cause to obtain search and seizure warrants, but stood by in active concert pursuant to a code of silence and allowed Ladd and other similarly situated persons

to have their constitutional civil and other rights violated by unlawful searches and seizures, malicious prosecutions, wrongful convictions and wrongful imprisonments.

55. Under Defendant Mowka's leadership, the City of St. Louis Police Department was plagued with police misconduct involving the repeated use of false statements allegedly made by nonexistent so-called CIs in affidavits of probable cause to acquire search and seizure warrants that led to the unlawful search and seizure, wrongful arrest, malicious prosecution, wrongful conviction and wrongful imprisonment of innocent persons, like Ladd.

56. For example, it has been reported that after being wrongfully convicted and imprisoned in 1998, Stephen Jones, an African American man, was recently freed from federal prison after more than 12 years in federal prison after his conviction was thrown out because a City of St. Louis police officer manufactured evidence against him. See "Judge frees St. Louis man imprisoned on testimony of corrupt ex-cop," www.STLtoday.com 11/10/2010 (see Exhibit Q).

57. Like in this case, the SLBPC, City of St. Louis Police Department, St. Louis Metropolitan Police Department is beset by other accusations of concealing and destroying Brady evidence sought by the accused in other cases. See "Dirty-cop cases taint the system," www.STLtoday.com 2/23/2009 (Exhibit R); "Bad-cops cases may free some convicts," www.STLtoday.com 1/11/2010 (Exhibit S).

58. Over the course of more than seven (7) years, Defendant Pickering and other City of St. Louis police officers, while on duty and acting under the color of state law, agreed to act in concert with each other and did act in concert with each other, without any legal justification, to make numerous appearances in criminal and civil legal proceeding

involving Ladd where they knowingly, wrongfully, willfully, maliciously, wantonly, negligently and indifferently to the truth, constitutional, civil and other rights of Ladd, pursuant to an unconstitutional custom, policy and practice, with the intent to falsely testify and present false physical evidence or did falsely testify and present false physical evidence and/or to assist others in the presentation of false testimony and false physical evidence against Ladd.

59. The City of St. Louis, State of Missouri, SLPBC and City of St. Louis Police Department did not have any safeguards or supervisory oversight in place to protect citizens like Ladd from corrupt and abusive police officers like Defendant Pickering and his making and presenting false statements in affidavits of probable cause.

60. The City of St. Louis, State of Missouri, SLPBC and City of St. Louis Police Department did not have any safeguards or supervisory oversight in place to collect, store and safeguard against misuse, abuse and destruction of information pertaining to so-called CIs.

61. Even after Ladd filed a complaint with the IAD Unit of the City of St. Louis Police Department on or about January 15, 2004, pursuant to a custom, policy and practice of deliberate indifference, Defendants did not take any action to preserve any information related to the so-called informant even though an active investigation was underway into the false allegations that Defendant Pickering claimed initially derived from the so-called CI.

62. As of this date, following numerous depositions, in Spring 2010, of the St. Louis Police Department, there is no record of the existence of the CI whom Defendant Pickering still claims was the alleged initial source of information set forth in his Affidavit of Probable Cause.

63. Defendants, maliciously and unlawfully acting in concert with each other pursuant to an unconstitutional custom, policy and practice of deliberate indifference to Ladd's constitutional, civil and other rights wrongfully and maliciously claim that the so-called CI was murdered and all records related to him have been lost or destroyed, including any open record or case file of his unsolved murder as is common police practice.

64. Defendants failed to preserve and destroyed all evidence related their I.A.D. investigation and any evidence related to the so-called CI during the pendency of another federal lawsuit against Defendants shortly after that lawsuit was filed in this federal district.

65. During the Spring of 2010, Ladd discovered these facts during the taking of several sworn depositions in another federal civil rights action wherein, for years, Defendants resisted every effort by Ladd and his attorney to discover their unconstitutional actions by willfully failing to comply with the Federal Rules of Civil Procedure and engaging in extensive Motions Practice to keep their unconstitutional actions secret from that federal court, Ladd and his attorney.

66. Ladd reasonably believes and avers that City of St. Louis police officers' unlawful conduct was so well-settled and common that it constituted an unlawful custom, policy and practice that it was the moving force behind the repeated deprivations of Ladd and other persons' constitutional rights.  This behavior is so egregious that during a recent case of police misconduct a federal judge instructed the jury that it could hold the SLBPC guilty of negligence for its lack of oversight of the police department.

67. The violation of Ladd and other persons' constitutional rights was foreseeable due to the City of St. Louis police officers' unlawful conduct. The unconstitutional custom, policy and practice of the St. Louis police Department has been brought forth the past 12 months

18

(January 2009 – Spring 2010) through numerous news articles, indictments of police officers for fabrication of evidence.

68. There exists an unconstitutional custom, policy and practice of deliberate indifference by the City of St. Louis because it was on notice for many years prior to Ladd's unlawful arrest and unlawful detention that police officers like Defendant Pickering were providing false information in affidavits of probable cause to obtain search and seizure warrants that led to the unlawful arrest and unlawful detention of Ladd and thousands of other innocent persons.

69. There exists an unconstitutional custom, policy and practice of deliberate indifference by the State of Missouri because it was on notice for many years prior to Ladd's unlawful arrest and unlawful detention that police officers like Defendant Pickering were providing false information in affidavits of probable cause to obtain search and seizure warrants that led to the unlawful arrest and unlawful detention of Ladd and thousands of other innocent persons.

70. There exists an unconstitutional custom, policy and practice of deliberate indifference by the SLPBC because it was on notice for many years prior to Ladd's unlawful arrest and unlawful detention that police officers like Defendant Pickering were providing false information in affidavits of probable cause to obtain search and seizure warrants that led to the unlawful arrest and unlawful detention of Ladd and thousands of other innocent persons.

71. There exists an unconstitutional custom, policy and practice of deliberate indifference by the City of St. Louis Police Department because it was on notice for many years prior to Ladd's unlawful arrest and unlawful detention that police officers like Defendant Pickering

were providing false information in affidavits of probable cause to obtain search and seizure warrants that led to the unlawful arrest and unlawful detention of Ladd and thousands of other innocent persons.

72. Ladd reasonably believes and avers that numerous State of Missouri, City of St. Louis, SLPBC and City of St. Louis Police Department officials have knowingly, wrongfully, willfully, maliciously, wantonly, negligently and indifferently failed to take any meaningful corrective actions against detectives, police officers and Circuit Attorneys to correct the constitutional violations described herein even though they could have by simply complying with the United States Constitution and other federal laws, implementing additional training, different disciplinary practices, hiring and firing practices, supervision and not covering up or ignoring past misconduct by detectives, police officers and Circuit Attorneys.

73. Further, Ladd reasonably believes and avers that even after numerous State of Missouri, City of St. Louis, SLPBC and City of St. Louis Police Department officials were put on reasonable notice of the constitutional violations described herein, instead of complying with the United States Constitution and other federal laws, implementing additional training, different disciplinary practices, hiring and firing practices, supervision and not covering up or ignoring past misconduct by detectives, police officers and Circuit Attorneys, to the contrary, numerous State, City and SLPBC officials continued their unconstitutional custom, policy and practice of covering up the constitutional violations described herein by opposing thousands of persons like Ladd's reasonable pretrial efforts to gather evidence in support of his innocence, and for years opposing thousands of persons like Jones' appeals, PCRAs, habeas corpus and writs of certiorari solely for the purpose of

denying persons like Ladd and Jones due process and equal protection of the laws of the United States.

74. The unwritten practice of Defendants, City of St. Louis, State of Missouri, SLPBC, City of St. Louis Police Department, Pickering and others led to the deprivation of Ladd's constitutional rights by the concealment and destruction of crucial evidence in criminal proceedings against him and the concealment and destruction of crucial evidence in federal civil proceedings against Defendants.

## IV.  CLAIMS FOR RELIEF

### COUNT I
### RELIGIOUS DISCRIMINATION
### 42 U.S.C. § 1983

75. Plaintiff hereby incorporates by reference all of the foregoing and realleges each averment as though fully set forth herein.

76. All Defendants agreed to and did act in concert with each other under the color of state law, knowingly, intentionally, willfully, maliciously, wantonly, negligently, recklessly and with deliberate indifference, in concert and conspiracy with each other and others to violate Plaintiff's constitutionally guaranteed religious rights because Plaintiff is, by faith, a Muslim who would not become an informant.

77. Defendants' concerted actions violated Plaintiff's constitutional rights under the Free Exercise Clause of the First and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. §§ 1983, 1985(3), 1986, 1988, Title VI of the Civil Rights Act of 1964 and other federal laws.

78. As a direct and proximate result of Defendants' knowingly, intentionally, willfully, maliciously, wantonly, negligently, recklessly and deliberately indifferent concerted conduct, Plaintiff has suffered and continues to suffer great pain and suffering, emotional distress, mental anguish, loss of reputation, scorn of the community, economic loss and loss of his constitutional and other state and federal rights.

**COUNT II**
**VIOLATION OF RELIGIOUS FREEDOM RESTORATION ACT**
**42 U.S.C. § 2000bb**

79. Plaintiff hereby incorporates by reference all of the foregoing and realleges each averment as though fully set forth herein.

80. Defendant Adler agreed to and did act in concert with Defendants, Pickering, McKelvey and other persons acting under the color of state law, knowingly, intentionally, willfully, maliciously, wantonly, negligently, recklessly and with deliberate indifference, in concert and conspiracy with each other and others to violate Plaintiff's constitutionally guaranteed religious rights because Plaintiff is, by faith, a Muslim who would not become an informant.

81. Defendants' concerted actions violated Plaintiff's constitutional rights under the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 2000bb, 42 U.S.C. §§ 1983, 1985(3), 1986, 1988, Title VI of the Civil Rights Act of 1964 and other federal laws.

82. As a direct and proximate result of Defendants' knowingly, intentionally, willfully, maliciously, wantonly, negligently, recklessly and deliberately indifferent concerted conduct, Plaintiff has suffered and continues to suffer great pain and suffering, emotional

distress, mental anguish, loss of reputation, scorn of the community, economic loss and loss of his constitutional and other state and federal rights.

## COUNT III
### VIOLATION OF DUE PROCESS – FAILURE TO DISCLOSE BRADY EVIDENCE
### 42 U.S.C. § 1983

83. Plaintiff hereby incorporates by reference all of the foregoing and realleges each averment as though fully set forth herein.

84. At all times during the extended period of constitutional violations described herein, all Defendants knowingly, intentionally, willfully, maliciously, wantonly, negligently, recklessly and with deliberate indifference in concert and conspiracy with each other and others to violate Plaintiff's constitutional rights under the Fourth, Fifth, Sixth, Seventh, Ninth and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. §§ 1981, 1983, 1985(3), 1986, 1988, Title VI of the Civil Rights Act of 1964 and other federal laws by systematically and continuously failing to disclose evidence that Plaintiff was entitled to under <u>Brady v. Maryland</u> that was exculpatory and Defendants' failure to disclose <u>Brady</u> evidence caused Plaintiff to unlawfully languish in jail for seventy-seven (77) days.

85. Defendants knew or should have known through reasonable investigation that the <u>Brady v. Maryland</u> evidence they failed to produce in Ladd's criminal proceedings had a negative impact on his ability to defend himself.

86. Further, Defendants' admissions during sworn testimony taken in Spring 2010, that documents were purged, and the personnel file of the CI along with all records of the IAD investigation, violated Ladd's due process.

87. Defendants' concerted actions violated Plaintiff's constitutional rights under the First, Fourth, Fifth, Sixth, Ninth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1981, 1983, 1985(3), 1986, 1988, Title VI of the Civil Rights Act of 1964 and other federal laws.

88. Defendants knew or should have known through reasonable investigation that the <u>Brady v. Maryland</u> evidence they failed to produce in Ladd's federal civil rights proceedings had a negative impact on his ability to prosecute his civil rights claims.

89. Defendants' concerted actions and admissions sworn under oath violated Plaintiff's constitutional rights under the First, Fifth, Seventh, Ninth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1981, 1983, 1985(3), 1986, 1988, Title VI of the Civil Rights Act of 1964 and other federal laws.

90. As a direct and proximate result of Defendants' knowingly, intentionally, willfully, maliciously, wantonly, negligently, recklessly and deliberately indifferent concerted conduct, Plaintiff has suffered and continues to suffer great pain and suffering, emotional distress, mental anguish, loss of reputation, scorn of the community, economic loss and loss of his constitutional and other federal rights.

**COUNT IV**
**<u>FAILURE TO SUPERVISE – CITY OF ST. LOUIS</u>**
**42 U.S.C. § 1983**

91. Plaintiff hereby incorporates by reference all of the foregoing and realleges each averment as though fully set forth herein.

92. For many years, City of St. Louis and its officials have knowingly, wrongfully, willfully, maliciously, wantonly, negligently and indifferently failed to supervise its employees or take any meaningful corrective action even though it could have by simply complying with

the constitution, implementing additional training, different disciplinary practices, hiring and firing practices, supervision and not covering up or ignoring past unlawful searches and seizures, unlawful arrests, malicious prosecutions, wrongful convictions, wrongful imprisonments and discrimination against Muslims and other official misconduct by the SLBPC and City of St. Louis detectives, police officers and Circuit Attorneys.

93. By knowingly, wrongfully, willfully, maliciously, wantonly, negligently and indifferently failing to supervise and discipline its employees and agents and/or failing to take any meaningful corrective action to change its supervisory and disciplinary policies, City of St. Louis and its officials, pursuant to an unlawful custom, policy and practice, have knowingly, wrongfully, willfully, maliciously, wantonly, negligently and indifferently to the constitutional, civil and other rights of Ladd acquiesced in, encouraged and facilitated the violations of Ladd's constitutional, civil and other rights described herein.

94. Defendants' concerted actions violated Plaintiff's constitutional rights under the First, Fourth, Fifth, Sixth, Ninth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1981, 1983, 1985(3), 1986, 1988, Title VI of the Civil Rights Act of 1964 and other federal laws.

95. As a direct and proximate result of City of St. Louis's knowingly, intentionally, willfully, maliciously, wantonly, negligently, recklessly and deliberately indifferent concerted conduct, much of which has come to light in recent newsworthy articles, Plaintiff has suffered and continues to suffer great pain and suffering, emotional distress, mental anguish, loss of reputation, scorn of the community, economic loss and loss of his constitutional and other federal rights.

## COUNT V
## FAILURE TO SUPERVISE – STATE OF MISSOURI
### 42 U.S.C. § 1983

96.  Plaintiff hereby incorporates by reference all of the foregoing and realleges each averment as though fully set forth herein.

97.  For many years, State of Missouri and its officials have knowingly, wrongfully, willfully, maliciously, wantonly, negligently and indifferently failed to supervise its employees and agents or take any meaningful corrective action even though it could have by simply complying with the constitution, implementing additional training, different disciplinary practices, hiring and firing practices, supervision and not covering up or ignoring past unlawful searches and seizures, unlawful arrests, malicious prosecutions, wrongful convictions, wrongful imprisonments and discrimination against African-American men, Muslims and other official misconduct by the City of St. Louis, SLBPC and City of St. Louis detectives, police officers and Circuit Attorneys.

98.  In sworn depositions taken in Spring 2010, Officer Nochierro, Chief of Police Isom, and former Chief of Police Mokwa, Officer Lehman, and Officer Huelsman, it has come to light that each failed individually and jointly to supervise its employees and agents, specifically Pickering and McKelvey.  Nor did they take any meaningful corrective action even though it could have by simply complying with the constitution, implementing additional training, different disciplinary practices, hiring and firing practices, supervision and not covering up or ignoring past unlawful searches and seizures, unlawful arrests, malicious prosecutions.  Each Defendant was unaware of Pickering's conduct in unwarranted surveillance, fabrication of an alleged CI, and destruction of all documents pertaining to the existence or death of the alleged CI.

99.   By knowingly, wrongfully, willfully, maliciously, wantonly, negligently and indifferently failing to supervise and discipline its employees and agents and/or failing to take any meaningful corrective action to change its supervisory and disciplinary policies, State of Missouri and its officials, pursuant to an unlawful custom, policy and practice, have knowingly, wrongfully, willfully, maliciously, wantonly, negligently and indifferently to the constitutional, civil and other rights of Ladd acquiesced in, encouraged and facilitated the violations of Ladd's constitutional, civil and other rights described herein.

100.  Defendants' concerted actions violated Plaintiff's constitutional rights under the First, Fourth, Fifth, Sixth, Ninth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1981, 1983, 1985(3), 1986, 1988, Title VI of the Civil Rights Act of 1964 and other federal laws.

101.  As a direct and proximate result of the State of Missouri's knowingly, intentionally, willfully, maliciously, wantonly, negligently, recklessly and deliberately indifferent concerted conduct, Plaintiff has suffered and continues to suffer great pain and suffering, emotional distress, mental anguish, loss of reputation, scorn of the community, economic loss and loss of his constitutional and other federal rights.

**COUNT VI**
**FAILURE TO SUPERVISE – ST. LOUIS BOARD OF POLICE COMMISSIONERS**
**42 U.S.C. § 1983**

102.  Plaintiff hereby incorporates by reference all of the foregoing and realleges each averment as though fully set forth herein.

103.  For many years, St. Louis Board of Police Commissioners ("SLBPC") and its officials have knowingly, wrongfully, willfully, maliciously, wantonly, negligently and indifferently failed to supervise its employees and agents or take any meaningful corrective action even

27

though it could have by simply complying with the constitution, implementing additional training, different disciplinary practices, hiring and firing practices, supervision and not covering up or ignoring past unlawful searches and seizures, unlawful arrests, malicious prosecutions, wrongful convictions, wrongful imprisonments and discrimination against African-American men, Muslims and other official misconduct by the SLBPC's employees and agents, City of St. Louis detectives and police officers.

104. In sworn depositions taken in Spring 2010, Officer Nochierro, awho was secretary of the BPC,  and former Chief of Police Mokwa, it has come to light that they failed individually and jointly to supervise its employees and agents, specifically Pickering and McKelvey. Nor did they take any meaningful corrective action even though it could have by simply complying with the constitution, implementing additional training, different disciplinary practices, hiring and firing practices, supervision and not covering up or ignoring past unlawful searches and seizures, unlawful arrests, malicious prosecutions.  Each Defendant was unaware of Pickering's conduct in unwarranted surveillance, fabrication of an alleged CI, and destruction of all documents pertaining to the existence or death of the alleged CI.

105. By knowingly, wrongfully, willfully, maliciously, wantonly, negligently and indifferently failing to supervise and discipline its employees and agents and/or failing to take any meaningful corrective action to change its supervisory and disciplinary policies, SLBPC and its officials, pursuant to an unlawful custom, policy and practice, have knowingly, wrongfully, willfully, maliciously, wantonly, negligently and indifferently to the constitutional, civil and other rights of Ladd acquiesced in, encouraged and facilitated the violations of Ladd's constitutional, civil and other rights described herein.

106. Defendants' concerted actions violated Plaintiff's constitutional rights under the First, Fourth, Fifth, Sixth, Ninth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1981, 1983, 1985(3), 1986, 1988, Title VI of the Civil Rights Act of 1964 and other federal laws.

107. As a direct and proximate result of SLBPC's knowingly, intentionally, willfully, maliciously, wantonly, negligently, recklessly and deliberately indifferent concerted conduct, Plaintiff has suffered and continues to suffer great pain and suffering, emotional distress, mental anguish, loss of reputation, scorn of the community, economic loss and loss of his constitutional and other federal rights.

## COUNT VII
## MALICIOUS PROSECUTION AND ABUSE OF PROCESS

108. Plaintiff hereby incorporates by reference all of the foregoing and realleges each averment as though fully set forth herein.

109. All Defendants knowingly, intentionally, willfully, maliciously, wantonly, negligently, recklessly and with deliberate indifference maliciously and abusively prosecuted Plaintiff and misused and otherwise abused criminal process to prosecute an innocent African-American Muslim solely for the purpose of making him an informant within the St. Louis Muslim community.

110. Defendants' concerted actions violated Plaintiff's rights under the laws of the State of Missouri.

111. All of the criminal proceedings investigated and commenced by Defendants, City of St. Louis, State of Missouri, SLBPC, Pickering and Adler against Ladd were terminated in favor of Ladd, lacked probable cause for the prosecution, Defendants' conduct was

actuated by malice (to compel Ladd to become an CI against other St. Louis area Muslims), and Ladd was damaged economically and noneconomically.

112. As a direct and proximate result of Defendants' knowingly, intentionally, willfully, maliciously, wantonly, negligently, recklessly and deliberately indifferent concerted conduct, Plaintiff has suffered and continues to suffer great pain and suffering, emotional distress, mental anguish, loss of reputation, scorn of the community, economic loss and loss of his constitutional and other state and federal rights.

**COUNT VIII**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

113. Plaintiff hereby incorporates by reference all of the foregoing and realleges each averment as though fully set forth herein.

114. All Defendants' concerted conduct was done knowingly, intentionally, willfully, maliciously, wantonly, negligently, recklessly and with deliberate indifference to cause Plaintiff extreme emotional distress.

115. Defendants' concerted malicious and abusive prosecution was done knowingly, intentionally, willfully, maliciously, wantonly, negligently, recklessly and with deliberate indifference to cause Plaintiff extreme emotional distress because he could have been convicted and imprisoned crimes that were based upon the false statements of Defendant Pickering and the cover-up by others.

116. At all times from September 23, 2003 until January 11, 2004, all Defendants knew or should have known through reasonable investigatory methods that Plaintiff was actually innocent; yet Defendants did not undertake any investigation to clear Plaintiff, to the contrary, Defendants did everything they could to convict an innocent African-American man or unlawfully compel him to become an informant which violated Plaintiff's

constitutional rights under the First, Fourth, Fifth, Sixth, Ninth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1981, 1983, 1985(3), 1986, 1988, Title VI of the Civil Rights Act of 1964 and other federal laws.

117. Defendants' concerted conduct was grossly reckless and beyond the bounds of conduct tolerated in a civilized society.

118. As a direct and proximate result of Defendants' knowingly, intentionally, willfully, maliciously, wantonly, negligently, recklessly and deliberately indifferent concerted conduct, Plaintiff has suffered and continues to suffer great pain and suffering, emotional distress, mental anguish, loss of reputation, scorn of the community, economic loss and loss of his constitutional and other state and federal rights.

**COUNT IX**
**BIVENS v. SIX UNKNOWN NAMED**
**AGENTS OF THE FEDERAL BUREAU OF NARCOTICS**
**CLAIM AGAINST DEFENDANT ADLER**

119. Plaintiff hereby incorporates by reference all of the foregoing and realleged as though fully set forth herein.

120. Defendant Adler agreed to and did act with Defendants, City of St. Louis, State of Missouri, SLBPC, as well as Defendants, Pickering and McKelvey, who were acting under the color of state law, knowingly, intentionally, willfully, maliciously, wantonly, negligently, recklessly and with deliberate indifference, in concert and conspiracy with each other and others to violate Plaintiff's constitutional rights because Plaintiff is African-American and Muslim.

121. In particular, as has been learned through the 2010 sworn deposition testimony of Officers McKelvey and Pickering, Defendant Adler acted in concert with them and others to violate Ladd's constitutional, civil and other rights by knowingly, intentionally, willfully,

maliciously, wantonly, negligently, recklessly and with deliberate indifference, manufacturing evidence, wrongfully acquiring a search and seizure warrant, wrongfully searching and seizing, wrongfully arresting, wrongfully imprisoning, wrongfully and maliciously prosecuting, interfering with Ladd's free exercise of his religious rights and freedom of association and withholding <u>Brady</u> evidence from Ladd.

122. Defendant Adler's concerted actions with Defendants violated Plaintiff's constitutional rights under the First, Fifth, Ninth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1981, 1983, 1985(3), 1986, 1988, Title VI of the Civil Rights Act of 1964 and other federal laws.

123. As a result of Defendants' knowingly, intentionally, willfully, maliciously, wantonly, negligently, recklessly and deliberately indifferent concerted conduct, Plaintiff has suffered and continues to suffer great pain and suffering, emotional distress, mental anguish, loss of reputation, scorn of the community, economic loss and loss of his constitutional and other state and federal rights.

**COUNT X**
**CIVIL CONSPIRACY UNDER THE COLOR OF STATE LAW**
<u>**TO VIOLATE PLAINTIFF'S CONSTITUTIONAL AND OTHER RIGHTS**</u>
**42 U.S.C. § 1983**

124. Plaintiff hereby incorporates by reference all of the foregoing and realleges each averment as though fully set forth herein.

125. All Defendants agreed to act and did act under the color of state law, knowingly, intentionally, willfully, maliciously, wantonly, negligently, recklessly and with deliberate indifference, in concert and conspiracy with each other and others to violate Plaintiff's constitutional rights under the First, Fourth, Fifth, Sixth, Seventh, Ninth and Fourteenth

Amendments to the United States Constitution, 42 U.S.C. §§ 1981, 1983, 1985(3), 1986, 1988, Title VI of the Civil Rights Act of 1964 and other federal laws.

126. As a direct and proximate result of Defendants' knowingly, intentionally, willfully, maliciously, wantonly, negligently, recklessly and deliberately indifferent concerted conduct, Plaintiff has suffered and continues to suffer great pain and suffering, emotional distress, mental anguish, loss of reputation, scorn of the community, economic loss and loss of his constitutional and other state and federal rights.

## COUNT XI
## DEMAND FOR DECLARATORY AND INJUNCTIVE RELIEF

127. Plaintiff hereby incorporates by reference all of the foregoing and realleges each averment as though fully set forth herein.

128. Plaintiff demands that the Court declare the aforementioned acts unconstitutional and permanently enjoin all Defendants and any other persons acting in concert with them from unlawfully charging, arresting and imprisoning Plaintiff and otherwise interfering with Plaintiff's exercise of his constitutional rights under the First, Fourth, Fifth, Sixth, Ninth and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. §§ 1981, 1983, 1985(3), 1986, 1988, Title VI of the Civil Rights Act of 1964 and other federal laws.

129. As a result of Defendants' conduct, Plaintiff has suffered and continues to suffer great pain and suffering, emotional distress, mental anguish, loss of reputation, scorn of the community, economic loss and loss of his constitutional and other federal rights.

## COUNT XII
## DEMAND FOR DAMAGES

130. Plaintiff hereby incorporates by reference all of the foregoing and realleged as though fully set forth herein.

131. On all Claims For Relief, Plaintiff demands noneconomic damages in the amount of $350,000.00.

132. On all Claims For Relief, Plaintiff demands economic damages in the amount of $500,000.00.

133. On all Claims For Relief, Plaintiff demands punitive damages in the amount of $2,500,000.00 because Defendants' actions exceeded the normal standards of decent conduct and were malicious, willful, oppressive, outrageous and unjustifiable.

134. On all Claims for Relief, Plaintiff demands reasonable attorneys' fees, costs of this action, expenses and interest.

135. Plaintiff demands other just relief as the Court may award.

## COUNT XIII
## DEMAND FOR JURY TRIAL

136. Plaintiff hereby incorporates by reference all of the foregoing and realleges each averment as though fully set forth herein.

137. On all facts and Claims For Relief asserted, Plaintiff demands a TRIAL BY JURY.

WHEREFORE, Plaintiff demands judgment and damages on all facts and claims for relief herein asserted, and upon judgment, all costs and interest.

Respectfully submitted,

/s/ Anser Ahmad
Anser Ahmad, Esquire
PA I.D. No. 75008 (admitted *pro hac vice*)
Ahmad Law Offices, P.C.
114 Walnut Street, Suite 4
Harrisburg, PA 17101
(717) 920-9100

Dated: November 29, 2010                    Attorney for Plaintiff

34