UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ABU BAKR LADD,                          )
                                        )
            Plaintiff,                  )
                                        )
      vs.                               )         Case No. 4:10CV02219 AGF
                                        )
CITY OF ST. LOUIS, et al.,              )
                                        )
            Defendants.                 )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' motions to dismiss Plaintiff Abu

Bakr Ladd's first amended complaint. For dismissal, the movants assert, among other

grounds, res judicata, statute of limitations, and failure to state a claim upon which relief

may be granted. For the reasons set forth below, the motions will be granted in part and

denied in part.

## BACKGROUND

### Procedural History

Plaintiff has filed two lawsuits, *Ladd v. Pickering*, No. 4:05CV916 RHK ("Ladd

I") and the instant suit ("Ladd II"), arising from a single series of events: the issuance of

a search warrant for, and the search of his home, his arrest by officers from the St. Louis

Metropolitan Police Department ("SLMPD"), his subsequent detention in federal custody,

and the denial of a complaint he filed with the Internal Affairs Division ("IAD") of the SLMPD.

The allegations common to both complaints are as follows. Defendant Jeffrey Pickering, a detective with the SLMPD, based on information purportedly received from a confidential informant (CI) and from his own personal observations, completed an affidavit in support of a search warrant for Plaintiff's home. On September 25, 2003, officers from the SLMPD and agents from the Federal Bureau of Investigation ("FBI") executed the search warrant. Upon completing the search, FBI agents arrested Plaintiff and took him into custody. While Plaintiff was in custody, an Assistant United States Attorney and several agents of the FBI and the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") met with Plaintiff and tried to recruit him as an informant for the federal government within the local Muslim community, but Plaintiff refused their request. Plaintiff was released from federal custody on December 11, 2003, and the charges against him were dropped on January 13, 2004. On January 15, 2004, Plaintiff filed a complaint with the IAD of the SLMPD, and on June 2, 2004, the IAD issued a written recommendation that Plaintiff's complaint be "not sustained." Plaintiff appealed that recommendation to the St. Louis Board of Police Commissioners ("the Board"), and the Board sustained the IAD's recommendation.

Ladd I

On June 6, 2005, Plaintiff filed his initial complaint in Ladd I against the FBI, the ATF, the United States Attorney's Office, the City of St. Louis, the Board, the SLMPD,

St. Louis City Mayor Francis Slay, numerous federal prosecutors and agents (including Defendant Luke Adler), and eleven St. Louis police officers, including Detective Pickering. In Ladd I, Plaintiff alleged four claims: (1) unreasonable search and seizure in violation of the Fourth Amendment pursuant to 42 U.S.C.§ 1983; (2) malicious prosecution; (3) false imprisonment; and (4) a civil conspiracy to cover up Plaintiff's allegedly improper arrest and detention.

On April 28, 2006, Judge Richard Kyle of the United States District Court for the District of Minnesota, sitting by designation, dismissed with prejudice Plaintiff's claims against the City, the Mayor, the United States Attorney's Office, the FBI, the ATF, and the SLMPD. (Ladd I, Doc. No. 53.) The claims against the federal officials named in their official capacity were dismissed for lack of federal subject matter jurisdiction. With respect to the remaining individual Defendants, SLMPD police officers, federal agents and Assistant United States Attorneys, Judge Kyle allowed Plaintiff the opportunity to amend his complaint to sue them in their individual capacities, by including specific allegations regarding the role, if any, played by each in the asserted violations of his rights. *Id.* At that time, the Court also granted Plaintiff leave to amend his civil conspiracy claims to add additional facts in support of a "meeting of the minds."

Plaintiff did not pursue the proposed amendments, and instead, on May 30, 2006, Plaintiff filed an amended complaint naming Pickering, individually, the Board, and individual Board members: Colonel Susan C. J. Rollins, Colonel Bart Saracino, Colonel Jo Ann Freeman, Colonel Michael J. Quinn, and Captain Antoinette M. Filla, as

Defendants.  In his amended complaint, Plaintiff asserted the same four claims, including those that had been dismissed with prejudice, and failed to cure the defects in the civil conspiracy claim.  (Ladd I, Doc. No. 54.)  Plaintiff abandoned his claims against all other individual defendants.  *Id*.

The remaining Defendants moved to dismiss, and on October 4, 2006, Judge Kyle dismissed with prejudice Plaintiff's claims against the Board and the individual Board members finding that Plaintiff's allegations were impermissibly predicated upon respondeat superior, or in the alternative, that even if Plaintiff could show that the Board members were directly involved in the alleged wrongs, he had not and could not allege that the conduct of the Board members was the cause-in-fact of his alleged injuries. (Ladd I, Doc. No. 71.)  In addition, the Court dismissed Plaintiff's claims for malicious prosecution and false imprisonment as duplicative of Plaintiff's § 1983 claim under the Fourth Amendment because they arose from the same injury – the right to be free from arrest and prosecution without probable cause.  *Id*.  Finally, Plaintiff's claim asserting a civil conspiracy to deprive him of his constitutional rights was dismissed with prejudice, and his assertion of a civil conspiracy to  "cover up" the improper search was dismissed without prejudice for failing to allege a "meeting of the minds."[1]  *Id.*  Only Plaintiff's

---

[1]    The Court granted Plaintiff leave to amend his civil conspiracy claims to add additional facts in support of a "meeting of the minds," but Plaintiff did not amend his complaint to address this issue.

Fourth Amendment claim against Pickering, individually, remained. Plaintiff did not appeal these rulings.

On April 20, 2007, Plaintiff filed a motion to compel discovery related to his remaining Fourth Amendment claim against Pickering, seeking: (1) information and documentation provided by the CI to Pickering in support of the search warrant for Plaintiff's home; (2) information in Defendant's possession regarding the IAD complaint Plaintiff filed against Pickering with the SLMPD and the Board; (3) information in Defendant's possession regarding reprimands of Pickering by the SLMPD or the Board; and (4) information regarding Pickering's financial situation. (Ladd I, Doc. No. 82.)

On May 15, 2007, the District Court denied the portion of Plaintiff's motion to compel regarding the identity of the CI and Pickering's financial situation, but granted Plaintiff's request for information regarding the assertion by the SLMPD that Plaintiff's initial IAD complaint was lost after Plaintiff was released from federal custody, and his request for information concerning complaints lodged against, or reprimands of, Pickering. (Ladd I, Doc No. 91.)

On November 2, 2007, the District Court granted Pickering's motion for summary judgment on the one remaining claim. (Ladd I, Doc. Nos. 92, 93, 100, 101.) Plaintiff then appealed the District Court's grant of summary judgment in favor of Pickering and its denial of the motion to compel. (Ladd I, Doc. Nos. 102, 107, 109.)

On August 3, 2009, the Eighth Circuit reversed, in part, the District Court's denial of Plaintiff's motion to compel and vacated the grant of summary judgment in light of

that ruling. The Eighth Circuit instructed the District Court to order Pickering to produce, for *in camera* review, documentary evidence, if available, of the identity of the CI and any alleged conversations between the CI and Pickering concerning Plaintiff. The District Court was further instructed to examine the documents to determine whether the CI's identity and the content of the CI's communications "were essential to Plaintiff's § 1983 claim against Pickering and the police department." (Ladd I, Doc. Nos. 109, 110.)

In response to the Order, Defendant Pickering produced an affidavit with information about the CI. The Court determined that the information in the affidavit was not sensitive and should be shared with the Plaintiff. (Ladd I, Doc. No. 114.) Plaintiff thereafter filed a memorandum in support of his motion to compel discovery stating that he was entitled to Pickering's phone records relating to the period of his investigation and surveillance of Plaintiff, as well as an un-redacted version of the Board's and/or SLMPD's document retention policies. (Ladd I, Doc. Nos. 116, 136, 137.)

Plaintiff's motion to compel was granted on August 26, 2010, requiring Defendants to produce Defendant Pickering's cell phone number during the relevant period, and an un-redacted version of an e-mail chain mentioning another case involving the Board. On September 22, 2010, Judge Kyle held a hearing to entertain the City's objections to producing the information and specifically their contention that the information sought had been discarded or lost and was no longer available.

Given the City's inability to provide information about the CI and the fact that a record of Pickering's cell phone number at the relevant time no longer existed, Judge

Kyle found it possible that there had been spoliation of evidence. He ordered Defendants to make the SLMPD document retention policy available to Plaintiff by October 6, 2010, and further suggested that the parties submit briefs and supplement the record on the issue of spoliation. (Ladd I, Doc. No. 146.)

Plaintiff did not seek leave to amend his complaint to include allegations or claims related to spoliation of evidence. Instead, on November 29, 2010, four days before the start of the trial on the Fourth Amendment claim, Plaintiff filed a motion for sanctions with respect to spoliation of evidence and commenced this action, Ladd II. (Ladd I, Doc. No. 147.) Judge Kyle denied the motion for spoliation sanctions on December 1, 2010,[2]

---

[2]    In his ruling on Plaintiff's motion for sanctions related to the alleged destruction of evidence Ladd I, (Doc. No. 193) Judge Kyle stated:

The Motion concerns three types of evidence: Defendant's cell phone records from the period in question; the "index card" allegedly documenting the confidential informant; and the internal-affairs file regarding Plaintiff's complaint. (See Doc. No. 148 at 3-4.) Each is addressed in turn: The cell-phone records have not been spoliated, insofar as they are still available – Defendant simply cannot recall his phone number from the time in question, which was more than 7 years ago, and hence the records are of little use to Plaintiff because he cannot correlate them with calls made to/from Defendant. This is not spoliation. *See Insignia Sys., Inc. v. News Am. Mktg. In-Store, Inc.*, Civ. No. 04-4213, 2009 WL 483850, at *4 (D. Minn. Feb. 25, 2009) (Tunheim, J., adopting Report & Recommendation of Boylan, M.J.) ("Spoliation is defined as intentional destruction mutilation, alteration, or concealment of evidence.") (internal quotation marks and citation omitted)).

The destruction of the index card, assuming it occurred, does not prejudice Plaintiff. Indeed, the absence of the card enhances his case, because the card's suspicious "disappearance" could be viewed to suggest that there was never any informant. If the card had not been destroyed and continued to exist, however, it would hurt the Plaintiff's claims, because it would identify the confidential informant (who Plaintiff contends does not exist). Hence, there is no prejudice from the destruction of the card, and absent

and a five day jury trial on Plaintiff's Fourth Amendment claim against Pickering in his

individual capacity began on December 3, 2010.  The jury found in favor of Plaintiff on

his claim against Pickering and awarded him $5,000 in compensatory damages and

$25,000 in punitive damages.  (Ladd I, Doc. No. 222.)

Ladd II

In the instant case, Ladd II, Plaintiff names many of the same Defendants but

added new parties,[3] some additional factual allegations and new theories of recovery

based upon the facts and events of Ladd I.  In addition to the allegations in Ladd I,

Plaintiff now  alleges that the CI did not exist and that Defendants conspired to cover up

this fact by destroying documents or information regarding a CI and Pickering's phone

---

prejudice, there can be no sanction for spoliation.  *See Dillon v. Nissan Motor Co., Ltd.*, 986 F.2d 263, 267 (8th Cir. 1993).

The destruction of the internal-affairs file is not chargeable to Defendant, because there is no evidence in the record that he had control over that file.  Plaintiff offers nothing more than speculation that Defendant had control of or even access to the file – which, given that the file concerned an investigation into Defendant's conduct, seems dubious at best.  Absent evidence of control by Defendant, no spoliation sanction is appropriate.  *See, e.g., Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003).

[3]    The new Defendants in this case are the State of Missouri; six Police Officers: Paul Nocchiero (individually and in his capacity as Secretary of the Board), Joseph Lehman (individually and in his capacity as SLMPD Sergeant), Jack Huelsmann (individually and in his capacity as an SLMPD Deputy Commander), Daniel Isom (individually and in his capacity as an SLMPD Captain), David Heath (individually and in his capacity as an SLMPD Lieutenant Colonel), and Joseph Mokwa (individually and in his capacity as SLMPD Chief of Police); and Scott McKelvey (individually and in his capacity as an SLMPD Detective). McKelvey was named in the original complaint in Ladd I, but not in the amended complaint filed in that case.  (Ladd I, Doc. Nos.1 and 54)

records at the time of the investigation related to the search warrant.  These allegations

are new, but the facts upon which they are based were known to Plaintiff at the time of

the filing of the motion for spoliation sanctions in Ladd I where he argued for recovery

based upon these facts and the theories he now asserts as "new."  (Ladd I, Doc. Nos. 147,

193.)

On the basis of these factual allegations, Plaintiff filed, on May 17, 2011, an

amended complaint which is the subject of the motions now before the Court.  The

amended complaint names the following as Defendants: the City of St. Louis; the State of

Missouri; the Board, collectively and individually (Susan C.J. Rollins, Bart Saracino, Jo

Ann Freeman, Michael Quinn, Francis G. Slay, and Antoinette M. Filla); Pickering,

(individually and in his official capacity as an SLMPD detective); Scott McKelvey,[4]

(individually and in his official capacity as an SLMPD detective); six SLMPD police

officers associated with the IAD, David Heath, Jack Huelsmann, Daniel Isom, Joseph

Lehman, Paul Nocchiero, and Joseph Mokwa, such in their individual and official

capacities ("the Police Officers"); and FBI agent, Luke Adler, in his individual capacity.

The amended complaint alleges the following claims for relief:  religious discrimination

in violation of Plaintiff's constitutional rights under the First and Fourteenth

Amendments, 42 U.S.C. §§ 1983, 1985(3), 1986, 1988 and Title VI of the Civil Rights

Act of 1964 (Count I); violation of Religious Freedom Restoration Act (42 U.S.C. §

---

[4]    McKelvey is alleged to have assisted Pickering in the investigation preceding
the issuance of the search warrant.

2000(b)(b)) (Count II); violation of Due Process as a result of Defendants' failure to disclose exculpatory evidence (Count III); failure by Defendant, the City of St. Louis, to supervise its employees in the SLMPD (Count IV); failure by Defendant, the State of Missouri, to supervise (Count V); failure by Defendant Board to supervise SLMPD officers (Count VI); malicious prosecution and abuse of process with the aim to make Plaintiff an informant in the St. Louis Muslim community (Count VII); intentional infliction of emotional distress (Count VIII); a *Bivens* action against Defendant Adler for violations of Plaintiff's constitutional rights (Count IX); and civil conspiracy to violate Plaintiff's constitutional rights and to "cover up" those violations (Count X). Plaintiff seeks damages and declaratory and injunctive relief. (Doc. No. 35.)

All Defendants have filed motions to dismiss. In those motions, all Defendants assert that Plaintiff's claims in this action are barred by the doctrine of res judicata, because they arise from the same events as the allegations in Ladd I and those claims were either fully litigated in Ladd I by the same parties as those named in this action, or the privies of those parties, and that Plaintiff had a full and fair opportunity to litigate those claims in Ladd I. In the alternative, all Defendants assert that Plaintiff's claims are barred by the applicable statutes of limitations. Finally, certain Defendants assert sovereign immunity and, with respect to particular claims or parties, that Plaintiff fails to state claims upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

## **DISCUSSION**

### **Motions to Dismiss**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To survive a Rule 12(b)(6) motion to dismiss, a complaint "does not need detailed factual allegations," but the allegations must nonetheless "be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This requires more than mere "labels and conclusions," *id.*, and must state a claim that is "plausible on its face." *Id.* at 570. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short . . . of 'entitlement to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557).

### **Sovereign Immunity**

With respect to Plaintiff's claims against the State of Missouri, the Eleventh Amendment creates a bar to relief, whether monetary or injunctive, against states or state agencies. *Grover-Tsimi v. State of Minn.*, 449 Fed. App'x. 529, 530 (8th Cir. 2011) (citing *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (distinguishing *ex Parte Young*, 209 U.S. 123 (1908) which holds that state officials, but not states, may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment).

Plaintiff argues that the State and its subdivisions are not immune from suit under 42 U.S.C. §§ 2000d *et seq.*, (Title VI) and that he has alleged a claim under this statute.

While Plaintiff is correct that the State lacks Eleventh Amendment immunity under Title VI, *see 42 U.S.C. § 2000d–7(a)*, his Amended Complaint alleges only that the State failed to exercise appropriate supervisory authority over the Police Officer Defendants and not that it took direct action to illegally discriminate against him. In addition, Title VI prohibits discrimination on the basis of race, color, or national origin, *id*. § 2000d, and Plaintiff does not allege discrimination on the basis of these factors.

Plaintiff has not raised any other ground that might serve as an exception or waiver of this immunity, and as such, Plaintiff's claims against the State of Missouri will be dismissed.

**Res Judicata**

"[R]es judicata, or claim preclusion, bars relitigation of the same claim between parties or their privies where a final judgment has been rendered upon the merits by a court of competent jurisdiction." *Smith v. Updegraff*, 744 F.2d 1354, 1362 (8th Cir. 1984). For purposes of res judicata a final judgment on the merits of an action precludes the parties from relitigating issues that were – or could have been – raised in that action. *Knutson v. City of Fargo*, 600 F.3d 992, 996 (8th Cir. 2010). The Eighth Circuit has directed courts to consider whether the prior judgment was rendered by a court of competent jurisdiction; and whether the same parties or their privies were involved in both cases. *Murphy v. Jones*, 877 F.2d 682, 684 (8th Cir. 1989). "Furthermore, the party against whom res judicata is asserted must have had a full and fair opportunity to litigate

the matter in the proceeding that is to be given preclusive effect." *In re Anderberg-Lund Printing Co.*, 109 F.3d 1343, 1346 (8th Cir. 1997).

The claims and parties in each suit need not be identical. Rather, courts must determine "whether the claims arise out of the same nucleus of operative fact or are based upon the same factual predicate." *Murphy*, 877 F.2d at 684-85. The discovery of additional information relating to the same nucleus of facts or events does not preclude application of res judicata. "The doctrine of res judicata would become meaningless if a party could relitigate the same issue . . . by merely positing a few additional facts that occurred after the initial suit." *Misischia v. St. John's Mercy Health Sys.*, 457 F.3d 800, 805 (8th Cir. 2006) (citing *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 751 (6th Cir. 2002)). "[I]n the final analysis[,] the test would seem to be whether the wrong for which redress is sought is the same in both actions." *Daley v. Marriot Int'l, Inc.*, 415 F.3d 889, 896 (8th Cir. 2005) (citation omitted).

Similarly, the addition of different legal theories will not allow a party to avoid res judicata. Where they arise from the same set of facts, "[t]he legal theories of . . . the two [different] claims are relatively insignificant because a litigant cannot attempt to relitigate the same claim under a different theory of legal recovery." *U.S. v. Gurley*, 43 F.3d 1188, 1195 (8th Cir. 1994) (citation omitted). In addition, pursuant to the related doctrine of issue preclusion (previously known as collateral estoppel), a party is estopped from revisiting not only claims, but also issues, that were determined in an earlier action. *Knutson*, 600 F.3d at 996. "'[O]nce a court has decided an issue of fact or law necessary

to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.'" *Id*. (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).

The addition or substitution of different parties to an action "does not extinguish" the application of res judicata or claim preclusion, as that doctrine "extends both to parties and to 'those who stand in privity with the [party] in the prior suit.'" *Peda v. Fort Dodge Animal Health, Inc.*, 293 F. Supp. 2d 973, 983 (N.D. Iowa 2003). Where the relationship between the old and new defendants is so close that it borders on near identity, the parties are in privity, and are considered "identical" for res judicata purposes. *Headley v. Bacon*, 828 F.2d 1272, 1276 (8th Cir. 1987) (internal citations omitted).

Where, as here, the parties whose privity is in question are government officials, additional considerations apply. Litigation involving the government is usually binding with respect to governmental officials who are sued in their official capacities in later actions. *Micklus v. Greer*, 705 F.2d 314, 317 (8th Cir.1983) (privity between officials of same government agency sued in their official capacity). But as a general rule, "litigation involving officials [sued] in their official capacity does not preclude relitigation in their personal capacity." *Headley*, 828 F.2d 1279. In addition, a prior suit against a municipality does not necessarily bar a subsequent suit against officials in their individual capacity because official capacity and personal capacity suits involve different legal theories and defenses. *Irving v. Dormire*, 586 F.3d 645, 647 (8th Cir. 2009) (internal citations omitted).

In addition, the Eighth Circuit has held that if the defendant in the later suit is an employee of the same entity that employed the defendant in the earlier suit, the defendant in the second lawsuit is in privity with party to the first lawsuit. *See Church of New Song v. Establishment of Religion on Taxpayers' Money v. Federal Bureau of Prisons*, 620 F.2d 648, 654 (7th Cir. 1980). Privity is found in such a case because, in their official capacities, the two parties, being employed by the same entity, have the same legal interests, and in their individual capacities, the parties share a "similar position of authority." *Young v. City of St. Charles*, 34 Fed. Appx. 245, at *1 (8th Cir. May 9, 2002).

In Ladd I, Judge Kyle, sitting by designation, presided over a "court of competent jurisdiction." The issues were fully and fairly litigated by Plaintiff with the assistance of counsel. The case was pending for more than six years, during which time the parties engaged in full discovery and filed, briefed, and argued before the court several motions to dismiss and motions for summary judgment. Following appeal and remand, additional discovery was undertaken, and additional dispositive motions were filed. Judge Kyle's rulings on Defendants' motions to dismiss and for summary judgment were final judgments on the merits, as was the five-day jury trial held with respect to Plaintiff's Fourth Amendment claim.

Therefore, with respect to the application of res judicata, the Court is satisfied that Ladd I was fully and fairly litigated before a court of competent jurisdiction. The

remaining questions then, are whether the two actions arise out of the same nucleus of operative fact and involve the same parties or their privies. *Murphy*, 877 F.2d at 684.

<u>Claims Against the Board, the Board Members and the City</u>

Applying the principles set forth above, the Court concludes that the claims asserted by Plaintiff in this action against the City of Saint Louis, and the Board, collectively and individually, are barred by the doctrine of res judicata because they arise out of the same nucleus of operative fact as the claims in Ladd I and involve the same parties or their privies.

The claims in Ladd I against the City and the Board were considered and dismissed with prejudice. (Ladd I, Doc. Nos. 53 & 71.) Although Plaintiff has stated new theories of recovery against the City and the Board, those claims arise from the same nucleus of operative facts – the search of Plaintiff's home, his arrest, his federal detention and the denial of his IAD complaint. Regardless of the legal theories Plaintiff now alleges, the wrongs for which Plaintiff seeks redress in this case – constitutional, statutory and common law violations arising from the search, arrest, detention and the denial of his subsequent complaints – are the same as the injuries he asserted in Ladd I. *Compare* Ladd I (Doc. No. 54) *with* Ladd II (Doc. No. 35).

Plaintiff asserts that new information, related to alleged spoliation of evidence and a conspiracy to cover up the violation of his constitutional rights, by denying the IAD complaint and destroying documentation relating to the complaint, was only uncovered on remand after the Eighth Circuit's reversal of the denial of his motion to compel, and

that the claims in his current complaint are not, therefore, barred by the doctrine of res judicata. As noted above, however, "merely positing a few additional facts that occurred after the initial suit" does not preclude the application of res judicata. *Misischia*, 457 F.3d at 805 (citation omitted).

Although Plaintiff contends that new facts came to light during depositions taken in the spring of 2010, he offers no persuasive reason for his failure to raise these allegations in Ladd I, apart from the questionable assertion that the Court in Ladd I had earlier admonished him and therefore he believed that he could not further amend his complaint in that action to include new theories and parties. The record does not support this contention. In dismissing Plaintiff's original civil conspiracy claim, Judge Kyle granted him leave to amend and directed him to include in his Amended Complaint specific factual allegations supporting his claims. (Ladd I, Doc. No. 53 at 19.) Plaintiff filed an amended complaint deleting all but two parties, alleging the very violations previously dismissed by the Court and failing to include, as directed by the Court, factual allegations in support of the civil conspiracy claim. In dismissing the civil conspiracy claim, Judge Kyle did refuse at that juncture to allow Plaintiff an additional opportunity to amend this claim, but he explicitly noted that the denial was "without prejudice to Ladd seeking leave to amend should discovery provide a sufficient factual basis for this claim." (Ladd I, Doc. No. 71, at 16.)

Moreover, in 2009, more than a year prior to trial, upon learning of the potential spoliation of evidence after the Eighth Circuit's reversal of the ruling on the motion to

compel, Plaintiff could have, but did not, seek leave to amend his complaint. In addition, after a subsequent motion to compel was granted on August 26, 2010, Plaintiff again failed to seek leave to amend his complaint to add his spoliation claims. Plaintiff's speculation about how the Court might have responded to such a request is not sufficient to cure his failure to raise those claims when he had sufficient knowledge of them and the opportunity to do so.

Plaintiff now attempts to characterize Ladd I as a suit about Pickering's unlawful search of Plaintiff's home and nothing more. Even a cursory review of the record in Ladd I and the issues raised throughout that suit reveals the fallacy of this position. Although only the Fourth Amendment claim against Pickering was tried to the jury, Judge Kyle had addressed in the context of motions to dismiss and for summary judgment and in his ruling on Plaintiff's motion for sanctions (Ladd I, Doc. Nos. 147 and 193) the merits of all the issues Plaintiff seeks to re-raise in this case.

<u>Claims Against Pickering</u>

The claims against Pickering in both his individual and official capacities are barred because Plaintiff had ample opportunity to raise his claims against Pickering in the Ladd I suit but failed to amend his complaint to do so. As discussed above, any new allegations and theories of recovery related to spoliation of evidence and an alleged conspiracy to cover up a violation of Plaintiff's constitutional rights arise out of the same nucleus of operative fact as Ladd I and were known to Plaintiff during the pendency of Ladd I.

<u>Claims Against the Police Officers and McKelvey</u>

Because the Police Officers and McKelvey are sued in their official capacities, and are in privity with defendants whose liability was determined in Ladd I, Plaintiff's claims against them are also barred by res judicata. The interests of these Defendants in this case are the same as the interests of the defendants in Ladd I – to establish that Ladd's constitutional and statutory rights were upheld in the course of his arrest, detention, and in the IAD complaint and appeal process. The Police Officers sued here, including McKelvey, are employees of the City or employees or members of the Board, entities whose lack of responsibility for the injuries Plaintiff alleges was established in Ladd I. As such they are in privity for purposes of liability in their official capacities with the City and the Board, and res judicata bars the present claims against them in their official capacities. *See Young*, 34 Fed. App'x. at *1; *Micklus*, 705 F.2d at 317.

Similarly, the claims against McKelvey, individually, are barred because under *Young* he is in privity with Pickering for purposes of the claims alleged in Ladd I. *See Young*, 34 Fed. App'x. at *1.

<u>State Law Claims</u>

In addition, the Court concludes that Plaintiff's state-law tort claims for malicious prosecution and abuse of process and intentional infliction of emotional distress which were dismissed in Ladd I as duplicative of his constitutional claims, are similarly duplicative here and barred by collateral estoppel or issue preclusion. Thus, the state law claims in Counts VII and VIII are dismissed as to all parties.

On the basis of the foregoing, the Court concludes that all claims against the City, the Board, the Board members, and Pickering and McKelvey, in their individual and official capacities, should be dismissed on the basis of res judicata and issue preclusion. That leaves the federal claims in Counts I, II, III, IX, and X against the Police Officers and Adler, in their individual capacities. With respect to the Police Officers, Plaintiff essentially asserts in these Counts that the denial of the IAD complaint was an effort to cover up the violation of his constitutional rights that resulted from the illegal search, arrest, and detention. He further alleges that all of these actions were motivated by religious animus. The Court is not persuaded that these federal claims are subject to dismissal on the basis of res judicata or issue preclusion. As noted above, under the principle set forth in *Irving v. Dormire*, the res judicata effect of the litigated claims against the City and the Board does not extend to the claims against the Police Officers in their individual capacities. 586 F.3d at 647. And Adler, who is now sued in his individual capacity, was sued previously in his official capacity only.

**Plaintiff's Claims against Adler**

Plaintiff names Defendant Adler, a federal agent, in Counts I, III, and X brought pursuant to § 1983. Those claims will be dismissed against Adler because federal officers may not be held liable under § 1983. *Christian v. Crawford*, 907 F.2d 808, 810 (8th Cir. 1990). The *Bivens* claim advanced in Count IX is the exclusive vehicle for Plaintiff's assertion of claims against Adler, but pursuant to the analysis set forth below that claim will be dismissed as untimely. *See id.* In addition, Plaintiff alleges a claim

against all Defendants, including Adler, under *Brady v. Maryland*, 373 U.S. 83 (1963).

For at least two reasons, Count III will be dismissed as to Adler and all other Defendants.

First, the Court is unaware of a recognized private right of action to recover damages for

a violation of the principles set forth in *Brady*. Second, as a matter of law there is no

*Brady* violation here because the indictment against Plaintiff was dismissed before the

institution of any criminal proceedings against him. *Id.* at 87 (holding that suppression by

the prosecution of evidence favorable to an accused upon request violates due process

where the evidence is material either to guilt or to punishment). Therefore, even if

exculpatory evidence has been withheld, Plaintiff has suffered no constitutional injury

cognizable under *Brady*. *See U.S. v. Porchay*, 651 F.3d 930, 942 (8th Cir. 2011).

**Statutes of Limitations**

Defendants also contend that Plaintiff's claims in this action are barred by the

applicable statutes of limitations. The remaining claims, namely, the claims against Adler

and the Police Officers in their individual capacities, are brought pursuant to 42 U.S.C.

§§ 1983, 1985(3), 1986, and 2000(b)(b), which have varying limitations periods.[5]

---

[5] Summarizing the applicable statutes of limitations for the remaining claims, the Court notes that the applicable statute of limitations for actions under § 1983 (Counts I, III, X) and for the *Bivens* claim (Count IX) is a term of five years. *Farmer v. Cook*, 782 F.2d 780,780-81 (8th Cir. 1986) (applying Mo. Rev. Stat. § 516.120(4) in an action under § 1983). The applicable statute of limitations, as set forth in the statutory provision, for actions under §1986 (Count X) is one year. The limitations period for an action under § 1981 or 1985(3) (Counts I, III, X) is three years. *Cross v. General Motors Corp.*, 778 F.2d 468, 469-70 (8th Cir. 1985) (citing *Peterson v. Fink*, 515 F.2d 815, 816-17 (8th Cir. 1975) (applying Missouri's three-year statute of limitations, Mo. Rev. Stat. § 516.130(1), to an action against an "officer, upon a liability incurred by the doing of an act in his official capacity and in virtue of his office"). The applicable statute of limitations, as set

Despite Plaintiff's contention to the contrary, this is not a case involving a continuing violation of any of the statutes under which Plaintiff sues. *See Izaak Walton League of America, Inc. v. Kimbell*, 558 F.3d 751, 759 (8th Cir. 2009); (holding that to apply the continuing violation theory, there must be "new overt acts . . . [that are] more than the unabated inertial consequences of the initial violation.") (citation omitted).

Plaintiff's claims against Adler accrued at the time of his arrest in September 2003, and his claims against the Police Officers accrued on June 3, 2004, when his IAD complaint was denied. The Court finds that at the very least, six years and six months elapsed between the accrual of Plaintiff's claims and the filing of the suit on November 29, 2010.

Plaintiff correctly notes that the doctrine of equitable tolling is appropriate "when the plaintiff, despite all due diligence, is unable to obtain vital information bearing on the existence of his claim." *Dorsey v. Pinnacle Automation Co.,* 278 F.3d 830, 836 (8th Cir. 2002). The Court agrees that equitable tolling is appropriate here with respect to Plaintiff's claims against the Police Officers, as Plaintiff sought discovery related to these claims and a significant period of time elapsed between Plaintiff's request for information concerning the CI and the IAD investigation and the resolution of the issues concerning that information. But equitable tolling is not applicable to Plaintiff's claims against Adler, as those claims were not affected by the information that was the subject of the motion to compel.

_____

forth in the statute, for actions under § 2000bb (Count II) is four years. *Jama v. U.S.I.N.S.*, 343 F. Supp. 2d 338, 365 (D.N.J. 2004).

Accordingly, the Court finds that for purposes of Plaintiff's claims against the Police Officers in their individual capacities, the statute of limitations should be equitably tolled for a period of two years and four months, beginning May 15, 2007, the date on which Ladd's motion to compel concerning evidence related to the CI and the IAD investigation was denied in part, until September 24, 2009, when the mandate issued on the Eighth Circuit's decision reversing that denial. Taking into account this period of tolling, when Plaintiff filed the instant suit, the statute of limitations had run for four years and two months. Therefore, the Court concludes that any claims in the current complaint against the Police Officers for which the applicable statute of limitations is four years or less are time barred, leaving only claims under § 1983. In addition, because the claims against Adler are not subject to equitable tolling, all claims against him are time barred.

Applying this analysis to the Amended Complaint, the Court finds that all of Plaintiff's remaining claims against Adler are time-barred, but Counts I, III, and X of Plaintiff's claims against the Police Officers under 42 U.S.C. §§ 1983 are timely. These claims, against the Police Officers in their individual capacities, are the only claims that remain.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the motion of Defendants David Heath, et al., to dismiss Plaintiff's First Amended Complaint is **GRANTED in part and DENIED in part** as follows:  (Doc. No. 40.)

a.      Plaintiff's claims against Defendants David Heath, Jack Huelsmann, Daniel Isom, Joseph Lehman, Joseph Mokwa, and Paul Nocchiero in their official capacities are **dismissed**;

b.      Plaintiff's claims against Defendants David Heath, Jack Huelsmann, Daniel Isom, Joseph Lehman, Joseph Mokwa, and Paul Nocchiero in their individual capacities are **dismissed**, except with respect to the § 1983 claims in Counts I, III and X;

c.      Plaintiff's claims against Defendants Jeffrey Pickering, Scott McKelvey, the St. Louis Board of Police Commissioners, and the State of Missouri are **dismissed with prejudice**.

**IT IS FURTHER ORDERED** the motion of Defendant, the City of St. Louis, Missouri, to dismiss Plaintiff's First Amended Complaint is **GRANTED**.  (Doc. No. 42.)

**IT IS FURTHER ORDERED** that the motion of Defendant Luke Adler to dismiss Plaintiff's First Amended Complaint is **GRANTED**.  (Doc. No. 48.)

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 31st day of March, 2012.