UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ABU BAKR LADD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:10CV02219 AGF |
| ) | |
| DAVID HEATH, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Plaintiff Abu Bakr Ladd ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983, asserting conspiracy claims[1] against Defendants Joseph Mokwa, former Chief of Police of the St. Louis Metropolitan Police Department ("SLMPD"); Lieutenant Colonel David Heath; Deputy Commander Jack Huelsmann; Captain Daniel Isom; Sergeant Joseph Lehman; and Paul Nocchiero, Secretary of the Saint Louis Board of Police Commissioners, in their individual capacities (collectively, "Defendants"). Now before the Court is Defendants' motion for judgment on the pleadings. For the reasons set forth below, the motion shall be granted.

## I. BACKGROUND

Plaintiff has filed two lawsuits, *Ladd v. Pickering*, No. 4:05CV916 RHK ("*Ladd*

---

[1] Defendants do not ask the Court to evaluate the sufficiency of the allegations regarding the alleged conspiracy between Defendants.

*I*") and the instant suit ("*Ladd II*"), arising from the same series of events: use of a false affidavit to support the issuance of a search warrant for, and the search of, his home; his arrest by officers of the SLMPD; his subsequent detention in federal custody; the denial of a complaint he filed with the Internal Affairs Division ("IAD") of the SLMPD; and an alleged cover-up that occurred during *Ladd I,* the first federal civil rights suit premised upon these facts.  Although some of Plaintiff's claims were dismissed in *Ladd I,* he ultimately prevailed.  Following a five day trial on his Fourth Amendment claim against Jeffrey Pickering, an officer of the SLMPD, the jury found in favor of Plaintiff and awarded him $5,000 in compensatory damages and $25,000 in punitive damages.  (*Ladd I*, Doc. No. 222.)

   A. **Procedural Background**

Previously in this action, *Ladd II,* Defendants moved to dismiss Plaintiff's first and second amended complaints.  The Court ruled on the motions to dismiss as to each complaint.  In doing so, the Court dismissed the claims against Defendants Heath, Huelsmann, Isom, Lehman, Mokwa, and Nocchiero in their official capacities.  In addition, except for two claims under § 1983 alleging conspiracies to violate Plaintiff's constitutional rights, the Court also dismissed the claims against these Defendants in their individual capacities.  Finally, the Court dismissed with prejudice Plaintiff's claims against then-defendants Jeffrey Pickering, Scott McKelvey, the St. Louis Board of Police Commissioners, the State of Missouri, the City of St. Louis, and Luke J. Adler, a federal agent.  Only Plaintiff's claims that Defendants conspired:  (1) to discriminate against him on the basis of his religion and (2) to generally deprive him of his constitutional rights

remained. Thereafter, by leave of court, Plaintiff filed a third amended complaint alleging only the two remaining claims.

### B. Allegations Concerning the Conspiracy to Arrest Plaintiff

In his third amended complaint Plaintiff alleges that in May 2003 the Federal Bureau of Investigation began investigating Plaintiff with the intention of maliciously prosecuting him to obtain leverage to persuade him to act as a police informant within the St. Louis Muslim community. Plaintiff alleges that in order to curry favor with their supervisors and federal law enforcement officials, SLMPD detectives Jeffrey Pickering and Scott McKelvey agreed to provide Agent Adler, the purported leader of the federal effort, with false information about Plaintiff. Plaintiff further contends that to this end, Pickering completed an affidavit in support of the search warrant for Plaintiff's home containing information that Pickering knew to be false. Specifically, Plaintiff alleges that despite Pickering's assertion that the affidavit was based in part upon information provided by a confidential informant, no such informant existed. Plaintiff also asserts that Pickering could not have observed him, as reported in the affidavit, because Plaintiff was in another state at the time of the surveillance.

Plaintiff next alleges that in September of 2003, Pickering, officers from the SLMPD, and certain federal agents conducted a search of Plaintiff's home pursuant to the search warrant issued based on Pickering's affidavit. They found several firearms in the home and arrested Plaintiff, a felon, for possession of the firearms. Plaintiff remained in federal custody for 77 days, during which time he alleges he was asked to be a confidential informant and provide law enforcement officials with information regarding

the St. Louis Muslim community.  Plaintiff refused to serve as an informant.  In his federal criminal case Plaintiff moved to suppress the seizure of the guns on the ground that the search warrant had been improper.  But shortly before an evidentiary hearing on the motion to suppress, the federal criminal case against Plaintiff was dismissed.

### C. Allegations Concerning the Cover-up of Plaintiff's Unlawful Arrest

After the criminal case against him was dismissed, Plaintiff promptly filed a complaint with the IAD of the SLMPD.  Plaintiff alleges that Defendant Lehman oversaw the investigation of IAD complaints.  After receiving notice from Defendant Nocchiero that his IAD complaint could not be found, Plaintiff filed a second IAD complaint.  Plaintiff asserts that Defendants and other unnamed persons improperly investigated his IAD complaint and wrongfully concluded that it would be "not sustained," because there was insufficient evidence to either prove or disprove the allegations in the complaint.[2]

Plaintiff next alleges that Defendants Heath, Huelsmann, Isom, Mokwa, and Nocchiero conspired to approve Defendant Lehman's improper findings with respect to the IAD complaint.  Plaintiff also contends that these Defendants conspired to destroy evidence collected during the IAD investigation, including evidence related to the existence or non-existence of the confidential informant referenced in the affidavit for the

---

[2]   IAD complaints are classified into four categories: unfounded, exonerated, not sustained, and sustained.  "Unfounded" means that the complaint was not based on facts, as shown by the investigation, or the incident complained of did not occur.  "Exonerated" means that the action complained of did occur, but the investigation disclosed that the actions were reasonable, lawful, and proper.  "Not sustained" means that there was insufficient evidence either to prove or disprove the allegations of the complaint.  "Sustained" means that the investigation revealed sufficient evidence to support the allegations of the complaint.  (Doc. No. 100-14.)

search warrant.  In addition, Plaintiff alleges that the cover-up conspiracy evidenced by the aforementioned actions was designed to deprive him of his due process rights with respect to the IAD proceeding.

Plaintiff further alleges that all Defendants, acting in concert with one another, conspired to cover up the deficiencies in the affidavit and hence, the search and arrest, by representing that the confidential informant had been murdered and all records related to him lost or destroyed.  Specifically, Plaintiff alleges that over the course of more than seven years, Pickering and other unnamed SLMPD officers, agreed to act in concert with and did act in concert with each other to present false testimony and physical evidence regarding the statements in the affidavit.  (Doc. No. 100, ¶ 59.)  Plaintiff contends that Defendant Nocchiero knew that certain police officers and detectives testified falsely and presented false physical evidence against Plaintiff in various proceedings but failed to correct or discipline them for this misconduct.  Finally, Plaintiff alleges, with respect to *Ladd I,* that the aforementioned actions constitute a conspiracy to prevent him from obtaining access to the courts and to fully exhaust his legal remedies.

## II. DISCUSSION

### A. Standard of Review:  Judgment on the Pleadings

> In deciding a motion for judgment on the pleadings, the Court accepts all facts pled by the nonmoving party as true and draws all reasonable inferences from the facts in favor of the nonmovant.  This is a strict standard, as judgment on the pleadings is not properly granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.

*Nielsen v. Union Sec. Ins. Co*., No. 4:12CV1698 JAR, 2013 WL 3849970, at *1 (E.D.

Mo. July 24, 2013) (citations omitted).

### B. Elements of a § 1983 Conspiracy to Violate Constitutional Rights

To succeed on his § 1983 conspiracy claims, Plaintiff must show that (1) Defendants conspired to deprive him of a federal constitutional or statutory right, (2) "at least one of the alleged coconspirators engaged in an overt act in furtherance of the conspiracy," and (3) Plaintiff was injured by that overt act.  *S.L. ex rel. Lenderman, v. St. Louis Metro. Police Dep't Bd. of Police Comm'rs*, 725 F.3d 843, 850 (8th Cir. 2013) (quoting *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999)).  Although a "conspiracy is not itself actionable in the absence of an underlying wrongful act . . . only one of the alleged conspirators must have committed [such an act.]"  *Process Controls Int'l, Inc. v. Emerson Process Mgmt.*, No. 4:10CV645 CDP, 2011 WL 6091722, at *2 (E.D. Mo. Dec. 7, 2011) (citations and internal quotation marks omitted).  Even if the acts in furtherance of the conspiracy are adequately alleged, a plaintiff must do more than "merely allude to a meeting of the minds . . . [he or she] must support the assertion[s] with specific allegations of collusion."  *Id*. at *3 (citing *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1063 (8th Cir. 2005)).

Plaintiff's complaint alleges two conspiracies: one designed to deprive him of his constitutional rights under the Fourth Amendment and another designed to cover up that alleged deprivation.  Plaintiff also contends that these conspiracies were motivated in part by religious animus.  Plaintiff's allegations concerning religious discrimination do not however, identify actions by these Defendants.  The allegations of religious animus concern federal agents, including former defendant Adler, but no facts in Plaintiff's third

- 6 -

amended complaint suggest that the remaining named Defendants discriminated against Plaintiff on the basis of his religious beliefs. Therefore, the Court will address the allegations concerning each of the described conspiracies but rejects any claim that either of the conspiracies was motivated by religious animus.

### C. Conspiracy to Deprive Plaintiff of his Fourth Amendment Rights

With respect to this first conspiracy, Plaintiff argues that Defendants conspired with former defendant Pickering and others to falsify an affidavit and conduct an unlawful search of his home, violating his rights under the Fourth Amendment. A review of the allegations indicates, however, that Plaintiff does not allege that Defendants took any action or reached a meeting of the minds until the time of the IAD proceeding, well after the alleged unlawful search, arrest, and Plaintiff's release from custody. Plaintiff alleges no facts in his third amended complaint suggesting that Defendants had any involvement in this first conspiracy at all. Nor does he allege that Pickering and/or the police officers responsible for the unlawful search conspired or agreed with Defendants to falsify an affidavit, conduct an unlawful search or arrest Plaintiff without just cause.

### D. Conspiracy to Cover-up the Deprivation of Plaintiff's Constitutional Rights

Plaintiff also alleges that the "cover-up" conspiracy effectively denied him of two constitutional rights: his right to due process in the IAD proceeding and his right to access the courts by pursuing his claims in *Ladd I*. This conspiracy claim fails because Plaintiff has not adequately pled either of these underlying constitutional violations.

1. Due Process and the IAD Proceeding

As an initial matter, there is no federal constitutional right to due process in an IAD proceeding against a police officer. *See Sanders v. Hobbs*, No. 5:10CV00281 JLH/JTR, 2010 WL 4259485, at * (E.D. Ark. Oct. 4, 2010), *report and recommendation adopted by* No. 5:10CV00281 JLH/JTR, 2010 WL 4259420 (E.D. Ark. Oct. 22, 2010) (concluding that plaintiff did not have a federal statutory or constitutional right to demand an internal affairs investigation); *Porter v. Columbus*, No. C2-06-1055, 2008 WL 5210873, at *6-7 (S.D. Ohio Dec. 12, 2008) (stating that it was "altogether unclear" how inappropriate handling of a citizen's complaint to the police department rises to the level of a constitutional tort); *cf. Morrow v. City of Oakland*, No. C 11-02351 LB, 2012 WL 368682, at *14 (N.D. Cal. Feb. 3, 2012) (concluding that the plaintiff did not have a constitutional right to "receive a policy [-] compliant investigation of his [EEOC] complaints" or "to have his grievances about [the police department's internal affairs division] investigations heard before an impartial body" (first alteration in the original)); *Bernstein v. New York*, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008) (concluding that there is no constitutional right to an investigation by government officials, including governmental refusal to investigate a crime, patent fraud, or an attorney ethics grievance).

The Court recognizes that in some instances a state or local statute may give rise to an interest in an internal affairs investigation protectable under the due process clause. But Plaintiff nowhere alleges a statutory provision that would create such an interest here. *See Garrison v. McQueeney*, No. C 94-3595 TEH, 1995 WL 39435, at *3 (N.D. Cal. Jan. 27, 1995) (stating that "[i]t is clear that a specific constitutional right to an internal affairs

investigation does not exist" and acknowledging that a state statute or regulation could "create a liberty interest protected by the Constitution" but finding that no such liberty interest had been created). Therefore, Plaintiff fails to state a claim for a conspiracy to deprive him of his due process rights with respect to the IAD proceeding because he has not alleged a legal basis for such a constitutional right.

2. Meaningful Access to the Courts

Similarly, Plaintiff fails to adequately allege a conspiracy to deprive him of the constitutional right to access the courts. Plaintiff's assertions here fail because he has not identified a predicate claim that he was unable to pursue or a remedy that he lost. *See Christopher v. Harbury*, 536 U.S. 403, 416 (2002) (holding that the predicate claim and lost remedy must be alleged for purposes of a "denial of access" claim). Moreover, even if Plaintiff had adequately alleged a predicate claim, this portion of his complaint would fail because he does not identify a causal link between Defendants' actions and the asserted denial of "meaningful access" to the courts. *See Scheeler v. City of St. Cloud*, 402 F.3d 826 (8th Cir. 2005) (citing *Alexander v. Macoubrie*, 982 F.2d 307, 308 (8th Cir. 1992)).

Assuming that the *Ladd I* suit constitutes a predicate claim, the Court notes that Plaintiff not only pursued, but also successfully obtained relief in *Ladd I*. After a hearing with respect to the missing records pertaining to the internal affairs files and the confidential informant, the court in *Ladd I* concluded that there was a possibility that spoliation of evidence had occurred and ordered Defendants to make the SLMPD document retention policy available to Plaintiff. The court further suggested that the

parties submit briefs and supplement the record on the issue of spoliation. (*Ladd I*, Doc. No. 146.) Despite this suggestion, Plaintiff did not seek leave to amend his complaint to include allegations related to spoliation of evidence. Instead, four days before the start of the trial on the Fourth Amendment claim in *Ladd I*, Plaintiff filed a motion for sanctions with respect to spoliation of evidence and commenced this action, *Ladd II*. (*Ladd I*, Doc. No. 147.) Although the court denied Plaintiff's request for sanctions, it allowed Plaintiff to argue that the jury could draw its own conclusions, including negative implications, from the disappearance of the internal affairs file and the lack of documentation regarding the confidential informant. (*Ladd I*, Doc. Nos. 193 and 200 n.1.) As noted above, Plaintiff prevailed on his claim and the jury awarded both compensatory and punitive damages. (*Ladd I*, Doc. No. 222.)

Similarly, Plaintiff has not alleged that the missing or fabricated evidence and/or an official "cover-up" deprived him of an adequate remedy in *Ladd I*. *See, e.g.*, *Foster v. City of Lake Jackson*, 28 F.3d 425, 427 (5th Cir. 1994); *Bell v. City of Milwaukee*, 746 F.2d 1205, 1223 (7th Cir. 1984). Indeed, in *Ladd I* Plaintiff recovered monetary damages and was offered the opportunity to further pursue his "cover-up" or spoliation claims, but declined to do so.

It is true that even where a plaintiff's underlying claim has not been impeded, courts may still recognize a constitutional claim for denial of access if the plaintiff alleges some other harm arising from that denial. *See, e.g.*, *S.L. ex rel. Lenderman*, 725 F.3d. at 852-53 (holding that physical and economic injuries linked to a conspiracy to deny the plaintiff access to the courts were sufficient to state a claim under § 1983 against the

conspirators even though the plaintiff also had a claim against her alleged assailant); *Gunter v. Morrison*, 497 F.3d 868, 874 (8th Cir. 2007) (holding that the plaintiff, who had succeeded on his underlying claim, had made out a valid § 1983 denial-of-access claim by alleging that the plaintiff was not promoted in retaliation for filing suit against the city).  In this case Plaintiff cannot rely on this formulation of the asserted constitutional claim because he does not allege that the conspiracy to cover up the deprivation of his rights caused him some "other injury."  Plaintiff pleads that he "suffered greatly" as a result of the cover-up, but he does not allege any specific facts to explain the nature of his injury.  Plaintiff does state that the arrest impaired his ability to find work.  To the extent that Plaintiff may be said to have alleged economic harm in this context, he has not pled a causal link between the conspiracy and that alleged harm.  For these reasons Plaintiff cannot satisfy the requirement that he plead an injury caused by the "cover-up."  *See S.L. ex rel. Lenderman*, 725 F.3d at 850.

### III. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion for judgment on the pleadings with respect to Plaintiff's third amended complaint is **GRANTED**.  (Doc. No. 108.)

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of January, 2014.

- 11 -