UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ABU BAKR LADD,                              )
                                            )
                    Plaintiff,              )
                                            )
        v.                                  )          Case No. 4:10CV02219 AGF
                                            )
PAUL NOCCHIERO, et al.,                     )
                                            )
                    Defendants.             )

## MEMORANDUM AND ORDER

This matter is before the Court on the motion (Doc. No. 150) for summary

judgment filed by the remaining Defendants in this case: Lt. Col. David Heath, Lt. Jack

Huelsmann, former Chief Daniel Isom, Sgt. Joseph Lehman, former Chief Joseph

Mokwa, and Lt. Col. Paul Nocchiero, all former or current employees of the St. Louis

Metropolitan Police Department ("SLMPD") (collectively, "Defendants"). For the

reasons set forth below, the motion will be granted.

## BACKGROUND

Plaintiff filed two lawsuits, *Ladd v. Pickering*, No. 4:05CV916 RHK ("*Ladd I*")

and the instant suit ("*Ladd II*"), arising from the same series of events: the use of a false

affidavit by SLMPD officer Jeffrey Pickering, based on information from an allegedly

fictitious confidential informant ("CI"), to support the issuance of a search warrant for

Plaintiff's home; Plaintiff's arrest by officers of the SLMPD; his subsequent detention in

federal custody; the denial of a complaint he filed with the Internal Affairs Division

("IAD") of the SLMPD in which he alleged that Pickering lied about the existence of the

CI; and an alleged cover-up that occurred during *Ladd I,* the first federal civil rights suit premised upon these facts. Although some of Plaintiff's claims were dismissed in *Ladd I,* he ultimately prevailed. Following a five-day trial on his Fourth Amendment claim against Pickering, the jury found in favor of Plaintiff and awarded him $5,000 in compensatory damages and $25,000 in punitive damages.

During *Ladd I*, Plaintiff sought from the City of Saint Louis and the SLMPD records related to his IAD proceeding, the issuance of the search warrant, and the identity of the CI, but he was unable to obtain the records. After a hearing with respect to the missing records, the court in *Ladd I* concluded that there was a possibility that spoliation of evidence had occurred and ordered that the SLMPD document retention policy be made available to Plaintiff. The court further suggested that the parties submit briefs and supplement the record on the issue of spoliation. (*Ladd I*, Doc. No. 146 at 13-14.) Shortly before the start of the trial on the Fourth Amendment claim in *Ladd I*, Plaintiff filed a motion for sanctions with respect to spoliation of evidence and thereafter commenced this action, *Ladd II*. (*Ladd I*, Doc. No. 147.) Although the court denied Plaintiff's request for sanctions, it allowed Plaintiff to argue that the jury could draw its own conclusions, including negative implications, from the disappearance of the IAD file and the lack of documentation regarding the CI. (*Ladd I*, Doc. Nos. 193 at 6-7 & 200 at 4 n.1.) As noted above, Plaintiff prevailed on his claim against Pickering, and the jury awarded both compensatory and punitive damages. (*Ladd I*, Doc. No. 222.)

On November 29, 2010, while *Ladd I* was still pending, Plaintiff filed this action, raising claims arising out of the alleged discrimination against Plaintiff on the basis of his

Muslim faith; the deprivation of Plaintiff's constitutional rights related to the unlawful search; the failure of the SLMPD to properly investigate Plaintiff's IAD complaint; and the failure of the SLMPD to preserve evidence related to these issues and the issues in *Ladd I*. After several amendments to the complaint and extensive motion practice, the only claim remaining in this litigation is Plaintiff's claim arising out of the alleged failure of the SLMPD to preserve evidence. The Court has read these allegations to state a claim for conspiracy by Defendants, in their individual capacities, to violate Plaintiff's First Amendment rights by denying him access to the courts.

The Court revived this access-to-courts claim after granting in part Plaintiff's motion to alter or amend the Court's prior judgment on the pleadings in favor of Defendants with respect to all claims in Plaintiff's Third Amended Complaint. *See* Doc. No. 144. In that motion, Plaintiff argued that his § 1983 conspiracy claim in the Third Amended Complaint stated a valid claim for "conspiracy and cover-up by the defendants" during *Ladd I*, which deprived Plaintiff of his constitutional right to access the courts. (Doc. No. 137 at 11.) The Court found that while Plaintiffs' Third Amended Complaint remained far from clear, certain allegations in the complaint could be fairly read to allege that Defendants willfully, and in concert with one another and others, failed to comply with the federal procedural rules and destroyed evidence to hinder Plaintiff's ability to pursue his court claim (presumably, *Ladd I*). The paragraphs in the Third Amended Complaint on which the Court focused alleged that Defendants "wrongfully and maliciously claim that the so-called CI was murdered and all records related to him have been lost or destroyed"; that Defendants "failed to preserve and destroyed all

evidence related [to] their I.A.D. investigation and any evidence related to the so-called CI during the pendency of another federal lawsuit against Defendants shortly after that lawsuit was filed in this federal district"; and that Defendants "willfully fail[ed] to comply with the Federal Rules of Civil Procedure . . . to keep their unconstitutional actions secret from that federal court, Ladd and his attorney."  (Doc. No. 100 at 15.)  The Court noted that, although Plaintiff in fact succeeded in his prior claim against Pickering, Plaintiff's Third Amended Complaint could be fairly read to allege that Defendants' concerted destruction of evidence prevented Plaintiff from pursuing claims in *Ladd I* against individuals other than Pickering, which could give rise to a constitutional claim for denial of access to the courts.

After reinstating Plaintiff's access-to-courts conspiracy claim, the Court also reopened discovery and granted the parties 90 days to complete any additional fact discovery.

Discovery has now closed, and Defendants have moved for summary judgment on Plaintiff's remaining access-to-courts conspiracy claim.  Defendants argue that Plaintiff has failed to offer any evidence that Defendants formed any agreement or acted in concert to intentionally deprive Plaintiff of his right of access to the courts.

The facts for the purpose of the summary judgment motion, viewed in the light most favorable to Plaintiff and giving Plaintiff the benefit of all reasonable inferences to be drawn from the record, are as follows.[1]  Defendants Lehman and Huelsmann, with

---

[1]    The Court reinstated Plaintiff's access-to-courts conspiracy claim based solely on his allegations regarding Defendants' actions taken *after* the filing of Plaintiff's IAD

some oversight by Isom, investigated and reviewed Plaintiff's IAD complaint. For purposes of the IAD investigation, Lehman interviewed Plaintiff and Pickering, and Lehman's general practice was to tape record interviews and to include a transcript of the tape recording in the IAD file. (Doc. No. 153-1 at 10, 12-13, 15.) Lehman recalled that, during his IAD investigation, he was informed by Huelsmann of the name of the CI, the CI's date of birth, and the fact that the CI was deceased.[2] *Id.* at 17-23. Lehman testified that he ran the CI's name through a records search and discovered that the CI had an extensive criminal record and had a residence in the vicinity of Plaintiff's address. *Id.* at 17-18. Finally, Lehman recalled a discussion with his supervisors, which generally would have been Huelsmann and Isom, in which he was told to avoid writing the CI's name in Plaintiff's IAD file in order to protect the CI's safety. *Id* at 15-17.

Defendant Heath signed the disposition of Plaintiff's IAD complaint, dated June 2, 2004, in which Plaintiff's complaint was found to be "not sustained."[3] Plaintiff appealed

---

complaint—namely, Defendants' alleged concerted destruction of evidence. (Doc. No. 144 at 8-10.) In response to Defendants' motion for summary judgment, Plaintiff includes a lengthy discussion of evidence regarding actions taken by individuals other than Defendants in the time period before the filing of his IAD complaint, which evidence has little or no bearing on the current motion.

[2] Although Lehman testified in his deposition that he learned of the CI's death through Huelsmann during the IAD investigation, Hueselmann testified that he did not recall learning about the CI's murder until much later, after Plaintiff filed his lawsuits. (Doc. No. 153-2 at 26.)

[3] IAD complaints are classified into four categories: unfounded, exonerated, not sustained, and sustained. "Unfounded" means that the complaint was not based on facts, as shown by the investigation, or the incident complained of did not occur. "Exonerated" means that the action complained of did occur, but the investigation disclosed that the actions were reasonable, lawful, and proper. "Not sustained" means that there was

this disposition.  Sometime after filing his appeal, Plaintiff attended a meeting of the

Board of Police Commissioners, at which he "complain[ed] about [his] case," and

Defendant Mokwa stated "I will handle this."[4]  (Doc. No. 153-3 at 6.)  Other than this

statement, and the fact that Mokwa was Chief of Police at this time, Plaintiff does not

allege any involvement by Mokwa with respect to Plaintiff's IAD complaint.  On July 5,

2004, Defendant Nocchiero issued a letter response to Plaintiff's IAD appeal affirming

the "not sustained" disposition.  In this response, Nocchiero stated that "a check by the

IAD investigators confirmed that this particular [confidential] informant [whom Plaintiff

alleged did not exist] is documented in the files of the division and is known to the

supervisor and commander of the division."  (Doc. No. 100-16 at 1.)  Nocchiero further

stated in the response that "[t]he informant, as can happen to people with this type of life

style, was murdered shortly after the investigation involving [Plaintiff] was completed

and as such can not [sic] be interviewed by our IAD investigators."  *Id.*

---

insufficient evidence either to prove or disprove the allegations of the complaint.
"Sustained" means that the investigation revealed sufficient evidence to support the
allegations of the complaint.  (Doc. No. 100-14.)

[4]      Contrary to Plaintiff's assertions regarding this Board meeting, Defendant Mokwa
testified in his deposition that he did not recall attending a Board meeting at which
Plaintiff was present, and did not recall saying that he would "handle" anything at such a
Board meeting.  (Doc. No. 153-10 at 33-34.)  In their reply brief, Defendants argue that,
even if the statement was made by Mokwa, it did not suggest anything other than that
Mokwa would "handle" Plaintiff's oral inquiry at the Board meeting.  (Doc. No. 158 at
10.)  However, neither party has provided records from which the Court could determine
whether Defendant Mokwa "handle[d]" or otherwise responded to Plaintiff's inquiry at
the Board meeting.  For purposes of this motion, the Court assumes the comment was
made.

In 2004 and 2005, the IAD maintained a document retention policy to purge files that were "not sustained" after one year from the date of the final determination. However, IAD files were not purged if a litigation hold was received. The date of final determination of Plaintiff's IAD complaint was July 5, 2004. Therefore, under the IAD's document retention policy, Plaintiff's IAD file should have been kept until at least July 6, 2005. Plaintiff filed *Ladd I* before this date, on June 6, 2005.

The evidence does not indicate the date on which Plaintiff's IAD file was purged, or by whom it was purged, but it became clear during the course of *Ladd I* that the file no longer existed. Defendants offer their own affidavits swearing that that they did not come to any agreement or participate in any joint activity regarding Plaintiff other than the normal processing of Plaintiff's IAD complaint. Defendants' affidavits state that four of them—Lehman, Heath, Nocchiero, and Mokwa—had no involvement with the purging of IAD files; that the other Defendants—Isom and Huelsmann—did not receive notice of any litigation hold that would prevent the purging of Plaintiff's IAD file; and that none of the Defendants knew in advance that Plaintiff was going to bring a lawsuit related to his IAD complaint.

Plaintiff argues that, notwithstanding Defendants' self-serving affidavits, the evidence as set forth above provides sufficient circumstantial evidence that Defendants conspired to deprive him of access to the courts. Plaintiff argues that the IAD file contained pertinent evidence regarding the identity, or non-existence, of the CI, and other evidence relevant to Plaintiff's claims in *Ladd I*. Plaintiff asserts that a reasonable juror could find that Defendants reached a meeting of the minds to cover up, withhold, and

destroy this evidence, and that had this evidence been uncovered, Plaintiff could have amended his complaint in *Ladd I* to include Defendants as additional parties. Plaintiff also states that because he does not know the contents of the IAD investigation, "there may have been other parties [aside from those named in *Ladd I*] whom Plaintiff could have included in his lawsuit." (Doc. No. 153 at 27.) Plaintiff argues that, although it is not clear who purged his IAD file or when it was purged, the file should have been preserved under the IAD's normal document retention policy for at least one year, by which time Plaintiff had filed *Ladd I*, and Defendants had a duty to preserve the file thereafter as it contained evidence relevant to Plaintiff's lawsuit.

Defendants argue that the undisputed evidence demonstrates that Defendants did not reach an agreement or act in concert to violate Plaintiff's rights. Defendants contend that, although there is evidence that some of the Defendants were involved at some point in the normal processing of Plaintiff's IAD complaint, there is no evidence that any of the Defendants acted in concert with respect to Plaintiff's IAD file or the destruction thereof. Indeed, Defendants argue that there is no evidence that any of them was directly responsible for purging Plaintiff's IAD file or that any of them participated in any cover-up of evidence with respect to Plaintiff's claims. Moreover, Defendants argue that even if there were evidence of a conspiracy, Plaintiff's claim would fail under the intracorporate conspiracy doctrine. Defendants argue that under this doctrine, a local government entity cannot conspire with itself through its agents acting within the scope of their employment. Therefore, Defendants argue that Plaintiff must plead and prove that a private party participated in the alleged conspiracy. Although Plaintiff has alleged

actions taken by individuals outside the City of Saint Louis and the SLMPD, such as actions taken by FBI agents with respect to Plaintiff's arrest and detention, these actions were taken prior to the filing of Plaintiff's IAD complaint. Because this Court has already ruled that the involvement in this case of these Defendants did not begin until the filing of Plaintiff's IAD complaint, Defendants argue that Plaintiff has failed to allege any concerted action between Defendants and individuals outside the City of Saint Louis and SLMPD, and Plaintiff's claim therefore fails under the intracorporate conspiracy doctrine. Finally, Defendants argue that because their conduct did not violate any clearly established constitutional right of Plaintiff, they are protected by qualified immunity.

Plaintiff responds that an exception to the intracorporate conspiracy doctrine applies here because Defendants acted for personal reasons outside the scope of their employment in committing the alleged constitutional violations in this case. In reply, Defendants argue that Plaintiff has submitted no evidence that Defendants were acting outside the scope of their employment or had any non-employment reason for their conduct.

## DISCUSSION

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be entered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, a court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable

inferences to be drawn from the record. *Sokol & Assocs., Inc. v. Techsonic Indus., Inc.*, 495 F.3d 605, 610 (8th Cir. 2007).

To be material, "the factual issue must potentially affect the outcome of the suit under the governing law." *Depositors Ins. Co. v. Wal-Mart Stores, Inc.*, 506 F.3d 1092, 1094 (8th Cir. 2007) (citation omitted). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

To succeed on a claim for conspiracy to deprive a plaintiff of access to the courts, a plaintiff must show that (1) the defendants conspired to deprive him such access; (2) at least one of the alleged coconspirators engaged in an overt act in furtherance of the conspiracy, and (3) he was injured by that overt act. *S.L. ex rel. Lenderman v. St. Louis Metro. Police Dept. Bd. of Police Comm'rs*, 725 F.3d 843, 850 (8th Cir. 2013). Additionally, the plaintiff must first prove a deprivation of the underlying constitutional right or privilege. *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999).

In this case, Plaintiff has failed to offer sufficient evidence of the underlying constitutional deprivation. "To establish a claim that a government official violated [a] plaintiff['s] constitutional right to access the courts, [the] plaintiff[] must show that the defendants acted with some intentional motivation to restrict [his] access to the courts." *A.J. ex rel. Dixon v. Tanksley*, No. 4:13-CV-1514 CAS, 2015 WL 901390, at *8 (E.D. Mo. Mar. 3, 2015). Plaintiff has not offered any evidence, direct or circumstantial, from

which it could be reasonably inferred that Defendants acted intentionally or deliberately to restrict Plaintiff's access to the courts. At most, the evidence suggests that some or all of the Defendants acted negligently because they should have been aware that a lawsuit was reasonably foreseeable at the time Plaintiff brought his IAD complaint—and certainly by the time Plaintiff filed *Ladd I*—and should have thereafter prevented the files relating to that complaint from being purged in accordance with the IAD's document retention policy. Negligent destruction of files may have supported a motion for discovery sanctions in *Ladd I*, but it does not rise to the level of a constitutional violation. *Cf. S.L. ex rel. Lenderman*, 725 F.3d at 853 (finding a question of fact was raised regarding an access-to-courts claim where "[t]here [was] supporting evidence that [the defendants] *deliberately* falsified arrest records to protect the department's reputation following [police officers'] abusive misconduct") (emphasis added); *see also Pressley v. Huber*, 562 F. App'x 67, 71 (3d Cir. 2014) (affirming summary judgment for a defendant on an access-to-courts claim where the plaintiff "did not provide any evidence to demonstrate that [the defendant] intentionally or deliberately destroyed his litigation files," and, at most, the evidence showed the plaintiff's access to courts was impeded by mere negligence); *Snyder v. Nolen*, 380 F.3d 279, 291 n.11 (7th Cir. 2004) ("[A]n allegation of simple negligence will not support a claim that an official has denied an individual of access to the courts.").

Moreover, even if the Court were to assume that Plaintiff could demonstrate that he was intentionally denied access to the courts, the evidence is insufficient as a matter of law to hold Defendants liable under § 1983 for conspiring to deprive him of this right.

"For a claim of conspiracy under Section 1983, the plaintiff need not show that each participant knew the exact limits of the illegal plan, but the plaintiff must show evidence sufficient to support the conclusion that the defendants reached an agreement to deprive the plaintiff of constitutionally guaranteed rights." *White v. McKinley*, 519 F.3d 806, 816 (8th Cir. 2008) (citation omitted). Thus, to avoid summary judgment on his conspiracy claim, Plaintiff must "specifically demonstrate with material facts that the defendants reached an agreement." *Larson by Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir. 1996) (en banc) (citation omitted). To satisfy this burden, he must point "to at least some facts which would suggest that [the defendants] reached an understanding to violate [his] rights." *Id.* (affirming a lower court's decision to set aside a jury verdict and grant the defendants judgment as a matter of law on a claim for conspiracy to deprive the plaintiffs of constitutional rights where evidence showed merely that the incident involving plaintiffs was discussed by the defendants at meetings, and there was "no evidence from which to reasonably infer that a conspiracy to deprive the [plaintiffs] of [their constitutional rights] was formed at these meetings").

Plaintiff has offered no evidence, direct or circumstantial, from which a jury could reasonably infer that Defendants reached an agreement to deprive Plaintiff of access to the courts. At most, the evidence suggests that Defendants had some involvement, however remote, in the normal processing of Plaintiff's IAD complaint, and that they had varying recollections with respect to the conduct of the IAD proceeding. Plaintiff has offered no evidence that Defendants interacted with each other in any way or came to any agreement regarding the destruction of Plaintiff's IAD file or any other evidence, which

is the basis of his access-to-courts claim. Indeed, Plaintiff does not dispute that four of the Defendants had no involvement whatsoever with respect to the purging of IAD documents, and Plaintiff has offered no evidence that the other Defendants agreed or acted in concert to destroy Plaintiff's IAD file or any other evidence. Therefore, even if Plaintiff had demonstrated a constitutional violation, the record does not reveal evidence of a conspiracy among Defendants.

Because there is insufficient evidence from which it could be reasonably inferred that a conspiracy existed among Defendants to deprive Plaintiff of his right of access to the courts, or that any intentional deprivation of that right actually occurred, the Court need not reach Defendants' additional arguments that the intracorporate conspiracy doctrine and qualified immunity bar Plaintiff's suit.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the motion for summary judgment filed by Defendants David Heath, Jack Huelsmann, Daniel Isom, Joseph Lehman, Joseph Mokwa, and Paul Nocchiero is **GRANTED**. (Doc. No. 150.)

All claims against all parties having been resolved, a separate Judgment shall accompany this Memorandum and Order

_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 25th day, of June, 2015.